## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BRANDON LIVAS, RICHARD BUSWELL,** | ) | **CIVIL ACTION NO.  20-cv-00422** |
| **DEWAYNE CORBETT, JOHNNY SMITH,** | ) | |
| **CARLOS LORENZO MARTIN and** | ) | |
| **GAINES ANDREWS, on behalf of** | ) | |
| **themselves and those similarly situated** | ) | |
| | ) | |
| | ) | **JUDGE DOUGHTY** |
| **VERSUS** | ) | |
| | ) | |
| **RODNEY MYERS, Warden of Oakdale** | ) | **MAGISTRATE JUDGE KAY** |
| **Federal Correctional Institutions; and** | ) | |
| **MICHAEL CARVAJAL, Federal Bureau** | ) | |
| **of Prisons Director, in their official** | ) | |
| **capacities** | ) | |

## BOP'S COVID-19 INMATE REVIEW UPDATE

Pursuant to a Conference held between the parties and the Court (Doc. 5),

the Bureau of Prisons ("BOP") provides the following information regarding the

framework or guidance under which decisions are being made as to the release,

removal, or furlough of prisoners at the Federal Correctional Complex-Oakdale

("FCC Oakdale"):

## Background

FCC Oakdale is comprised of three separate men's prison facilities. *See*

Declaration of Juan A. Segovia, Associate Warden, Federal Medical Center, Forth

Worth, Texas dated April 10, 2020 ("Segovia Decl."), attached hereto as Exhibit 1.

The complex includes two low security facilities: FCI Oakdale I and FCI Oakdale II,

and a minimum security facility: the Satellite Prison Camp ("the Camp"). Segovia

Decl. ¶2. FCI Oakdale I houses approximately 970 inmates in six housing units. *Id*. at ¶4. Three of the housing units have separately secured cells, while the remaining three housing units are dormitory style, with sleeping bunks arranged in cubicles. *Id*. FCI Oakdale II houses approximately 760 inmates, all in the traditional cell units with separately secured cells. *Id*. at ¶9. The Camp houses 123 inmates in a single, dormitory-style unit, similar to the dormitory units in FCI Oakdale I. *Id*. at ¶7.

The BOP is charged with the care, custody, and control of incarcerated individuals and is not empowered to reduce or modify criminal sentences imposed by courts, or to unilaterally release inmates.  Congress has left such decisions, to modify or reduce inmates' sentences, to their original sentencing courts.  *See* 18 U.S.C. § 3582.  The BOP's role in sentence reduction or modification proceedings involves the potential to move the sentencing court for a reduction in sentence on an inmate's behalf in certain circumstances.  18 U.S.C. § 3582(c)(1)(A).  BOP has set forth the guidelines under which it will make such a motion in its Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)." (Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf).  Segovia Decl. ¶14.

Although the BOP is not empowered to modify an inmate's sentence, Congress has provided the Attorney General and Bureau of Prisons with wide discretion in determining where to confine inmates.  *See* 18 U.S.C. § 3621.  Both placement in a RRC (also called a halfway house) and home confinement are forms

2

of confinement, not actual releases from custody.   *See* 18 U.S.C. § 3624(c).

Placement in a halfway house and/or home confinement is discretionary.  *See* 18

U.S.C. § 3621(c) ("Such conditions may include a community correctional facility"

and "[t]he authority under this subsection may be used to place a prisoner in home

confinement.") (emphasis added). While providing a framework of factors to consider

inmate placement, Congress also affirmed the breadth of the agency's discretion in

such matters, noting that even sentencing court orders regarding inmate placement

in a community correction facility "shall have no binding effect," and that "a

designation of a place of imprisonment under this subsection is not reviewable by

any court." 18 U.S.C. § 3621(b)(5).  Segovia Decl. ¶17.

## The BOP's Action Plan

The BOP began preparing for the coronavirus in January 2020 by obtaining

guidance from its Health Services Division regarding the disease, existing

outbreaks, and best practices to mitigate transmission. *See* Federal Bureau of

Prisons COVID-19 Action Plan,

https://www.bop.gov/resources/news/20200313_covid-19.jsp. An agency task force

also worked with the Centers for Disease Control ("CDC") and reviewed guidance

from the World Health Organization ("WHO"). Phase II of the BOP's Action Plan

was announced on March 13, 2020[1]. *Id*. National measures were made effective

immediately across the BOP which included:

- Screening of Inmates and Staff;

---

[1] FCI Oakdale I received its first positive COVID-19 test result on March 21, 2020 and has been on
lockdown since that time. Segovia Decl. at ¶4.

- Restriction on Contractor Access;
- Suspension of Social Visits/Tours;
- Suspension of Legal Visits;
- Suspension of Inmate Movements; and
- Modified Operations to maximize social distancing.

On March 31, 2020, the BOP announced that additional measures would be taken in response to the number of quarantine and isolation cases in its facilities. *See* COVID-19 Action Plan: Phase Five, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. Effective April 1, 2020, the BOP instituted a 14-day period of containment for inmates, wherein inmates were secured in their assigned cells/quarters to decrease the spread of the virus, with limited exceptions for programming, health and educational services. *Id.*

## The Attorney General's March 26, 2020 Memo

The U.S. Attorney General ("AG") issued a memorandum to the BOP directing, where appropriate, that the BOP utilize home confinement "to protect the health and safety of BOP personnel and the people in our custody." Attorney General Memorandum to the BOP dated March 26, 2020, attached hereto as Exhibit 2. Specifically, the AG directed the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." *Id.*  However the AG noted that many inmates would be safer in BOP facilities due to the controlled population and access to medical care. *Id.*

4

As such, the prioritization of home confinement was conditioned upon careful, individualized determinations made by BOP staff to include certain discretionary factors such as: (1) age and vulnerability to COVID-19; (2) facility security level; (3) prison conduct; (4) minimum PATTERN score; (5) demonstrated and verifiable re-entry plan to prevent recidivism and maximize public safety (lower risk of contracting COVID-19 upon release, than at BOP facility); and (6) crime of conviction and risk posed by the inmate to the community. *Id.* Additionally, the AG directed that a medical assessment be conducted to assess the inmate's COVID-19 risk factors, the associated risks at the inmate's facility, as well as the risks at the location of potential home confinement. *Id.* Moreover, the list of discretionary factors was non-exhaustive. The AG specifically noted that it is incumbent upon the BOP not to take any action that would contribute to the spread of COVID-19, or put the public at risk. *Id.*

### The Attorney General's April 3, 2020 Memo

On April 3, 2020, the AG issued a second memorandum to the BOP regarding the use of home confinement. *See* Attorney General Memorandum to the BOP dated April 3, 2020, attached hereto as Exhibit 3. Pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), the AG made a finding of emergency conditions which are materially affecting the function of the BOP. *Id.*; *see also*, Segovia Decl. ¶19. This finding allowed the AG to expand the cohort of inmates who can be considered for home confinement. *Id.* Thus, all at-risk inmates could now be considered for home confinement, rather than just inmates who were previously

eligible for transfer (inmates with 10 percent of prison term remaining or 6 months). *Id.* The AG also recognized that indiscriminately releasing inmates, "would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses." *Id.*; see also, Segovia Decl. ¶13.

## Conditions at FCC Oakdale

FCC Oakdale I has taken numerous steps to mitigate the spread of COVID-19 at each of its facilities. Inmate orderlies have been deployed on a 24-hour basis to disinfect, using appropriate cleaning chemicals, all such facilities after each use. This is in addition to daily surgical mask, soap, and disinfectant cleaning supplies being available to every inmate in the complex. A variety of additional soap and other hygiene items have been and remain available for inmate purchase. Orderlies are also assigned to disinfect all other communal use items, such as telephones and computers, after each use by the inmates. All inmates are also being monitored by medical staff daily, including temperature checks. Segovia Decl. ¶¶ 4, 8, 9.

FCI Oakdale is being used for quarantine and isolation related to COVID-19. Inmates exhibiting symptoms of the virus are placed on the isolation floor and tested for the virus. Inmates exposed to a symptomatic or a positive COVID-19 person are placed on the quarantine floor. Segovia Decl. ¶¶ 5, 6. There is also post-quarantine housing, where those cleared from the quarantine are further separated for an additional time to monitor their condition and ensure their safety. *Id.* at ¶6.

There have been forty-nine COVID-19 positive inmates at FCI Oakdale I, eighteen hospitalizations, and six fatalities. *Id*. at ¶4. The Camp has had one confirmed positive COVID-19 inmate, who was removed to isolation at FCI Oakdale I on April 2, when he began displaying symptoms. *Id*. at ¶7. There was one suspected positive inmate at FCI Oakdale II, however, he was transferred to a local hospital and remains there pending test results. *Id*. at ¶9. Finally, there have been 17 staff members who have tested positive for COVID-19. *Id*. at ¶10. Nineteen other staff members are quarantined away from the complex, awaiting test results. *Id*.

### Release or Transfer of Inmates

The BOP continues to consider the use of compassionate release for appropriate inmates who have existing terminal and debilitating medical conditions, or who are elderly and nearing the end of their sentence, as provided for in Program Statement 5050.50.  Segovia Decl. ¶15. FCC Oakdale staff have received a number of requests for consideration for a reduction in sentence motion. *Id*. Staff continue processing those requests and attempt to do so quickly in light of the current circumstances. *Id*.

Recent changes in the law also allow an individual inmate to make such a motion for reduction in sentence or compassionate release with their sentencing court for their current conviction, even if the BOP has not decided to make such motion on their behalf.  18 U.S.C. § 3582(c)(1)(A).  Inmates at FCC Oakdale, and at other facilities, have recently availed themselves of this option.  At least five FCC Oakdale inmates have recently filed such motions and, after their sentencing courts

made the appropriate individualized decisions, have been granted their requested sentence reductions. Segovia Decl. ¶16.

Pursuant to the March 26, 2020 memorandum from the Attorney General, the BOP has prioritized the consideration of home confinement, which has the potential to remove someone from the prison population faster, as a response to the COVID-19 pandemic.  Inmates at FCC Oakdale were considered for home confinement under the terms of this memo.  Three were thought likely to be approved and were transferred to quarantine in the special housing unit, pending final determination.  As noted in the BOP's notice to the Court filed on April 9, 2020, one of these three was later determined to be ineligible due to a history of sex crimes, one is waiting out his quarantine pending transfer, and one is being re-reviewed based on updated guidance discussed below. Segovia Decl. ¶ 18.

Based upon the AG's finding of emergency conditions pursuant to the CARES Act, discussed above, guidance on implementation of home confinement was initially provided by the BOP's Central Office, recommending initial review for placement in home confinement of inmates who meet the following nine criteria: 1) Primary Offense is not violent; 2) Primary Offense is not sex offense; 3) Primary Offense is not terrorism; 4) No detainer; 5) Mental Health Care Level is less than IV; 6) PATTERN (BOP's new risk and needs assessment tool) score is MIN; 7) BRAVO (BOP's existing risk evaluation tool) score is LOW or MIN; 8) Completed at least 50% of their sentence; and 9) No Incident Reports in the past 12 months. Segovia Decl. ¶19.

Based on this initial set of nine criteria, late on April 6, 2020, the BOP's Office of Research and Evaluation identified 4,013 inmates nationwide to be the first cohort reviewed under the extended home confinement timeframe.  Of these 4,013 inmates, fifty-eight are currently housed at FCC Oakdale.  This review would ordinarily be done by case management staff at FCC Oakdale.  However, circumstances made this a challenge, with a leader in this department being out under quarantine, and other staff having to perform ancillary custody functions to ensure basic needs, orderly operations, safety, and security are provided to FCC Oakdale inmates.  On April 8, 2020, AW Segovia began marshalling resources pulling from temporary staff with experience in case management, seeking remote assistance from other facilities, and freeing up FCC Oakdale's existing case management staff by transferring their emergent custody responsibilities to other temporary staff.  FCC Oakdale focused on the Camp and FCI Oakdale I inmates, because of COVID-19 cases from those facilities.  They have since reviewed thirty-four of the fifty-eight originally-listed inmates.  Segovia Decl. ¶20.

Acting upon additional guidance from the BOP's Regional Office Staff, on the afternoon of April 9, the reviewing staff have also expanded the criteria, removing the eighth factor, consideration of whether inmates in low or minimum facilities have served 50% of their sentence.  Accordingly, staff reviewed an additional 90 inmates for home confinement eligibility.  So far, ten additional inmates have been determined to be potentially eligible and they have already been placed in special housing or will be placed there shortly, allowing them to begin the 14-day pre-

transfer quarantine.  Of those reviewed, the most common reasons for ineligibility appear to be history of previous violence or sex offenses. Segovia Decl. ¶21.

The primary factors being used to prioritize consideration by BOP staff, including prison disciplinary history, PATTERN score, violence or sex crime history, and classification level, come directly from the Attorney General's March 26th Memorandum.  In his April 3rd Memorandum, the Attorney General reiterated that BOP's expanded consideration of inmates for home confinement should continue to be guided by those factors.  AW Segovia has checked the BOP's records for each of the named petitioners in this matter to determine whether they are likely to be reviewed for consideration under the Attorney General's expansion of home confinement eligibility.  Individual Petitioners Livas, Martin, Andrews, and Corbett have PATTERN risk recidivism scores above minimum, removing them from priority consideration. Petitioner Smith is ineligible due to his current offenses, involving the production and possession of child pornography.  Finally, based on the new April 9th expanded criteria, Petitioner Buswell appears to be eligible and will be given priority review for home confinement. Segovia Decl. ¶22.

Once reviews are completed for the initial list of FCC Oakdale inmates designated for priority consideration by the Attorney General's memorandum, it is anticipated that the institution may consider expanding the criteria for review.  AW Segovia further anticipates coordinating with medical staff at FCC Oakdale to continue additional reviews for inmates with the highest COVID-19 medical risk,

per CDC guidelines, who might not have met the previous criteria. Segovia Decl.
¶23.

Placement in RRC or home confinement, once approved, still requires a number of factors to be satisfied prior to implementation.  For example, the release plan needs to be evaluated by the appropriate United States Probation Office.  In order to facilitate faster removal of approved inmates from the prison facility, the BOP has provided its Wardens with additional guidance allowing the use of non-transfer furloughs up to 30 days in length in specific circumstances.   As inmates are approved for home confinement through the above-described review process, they may also be considered for such a furlough if they meet the criteria. Segovia Decl. ¶24.

The BOP staff at FCC Oakdale, and across the region, are working very hard to protect all from the effects of the current pandemic. In addition to the specific COVID-19 remediation measures outlined above, the BOP is continually working to reduce populations at affected facilities.  Within the discretion provided to the agency by Congress, the BOP staff continue to identify, evaluate, and place appropriately-situated inmates in halfway houses or home confinement, removing them from prison facilities.  The BOP also continues to work with sentencing courts on sentence reductions and compassionate release motions, as appropriate.  Segovia Decl. ¶25.

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

BY:   *s/ Karen J. King*
      KAREN J. KING  (#23508)
      KATHERINE W. VINCENT (#18717)
      Assistant United States Attorney
      800 Lafayette Street, Suite 2200
      Lafayette, Louisiana  70501
      Telephone:   (337) 262-6618
      Facsimile:   (337) 262-6693
      Email:        karen.king@usdoj.gov


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of April, 2020, a copy of the above and foregoing *BOP's COVID-19 INMATE REVIEW UPDATE* was electronically filed with the Clerk of the Court using the CM/ECF system.  I also certify that I have forwarded this filing via email to all known counsel of record:

Katie M. Schwartzmann
Bruce Hamilton
ACLU Foundation of Louisiana
P. O. Box 56157
New Orleans, LA  70156
Email:  kschwartzmann@laaclu.org
Email:  bhamilton@laaclu.org

David Luger                                Ryan J. Meyer
Hannah O. Koesterer                        Katten Muchin Rosenman LLP
Katten Muchin Rosenman LLP                 2121 Pearl Street, Suite 1100
525 W. Monroe Street                       Dallas, TX  75201
Chicago, IL  60661                         Email:  ryan.meyer@katten.com
Email:  david.luger@katten.com
Email:  hannah.koesterer@katten.com

Somil Trivedi                              Andres Woods
Jennifer Wedekind                          Brandon Buskey

American Civil Liberties Union
Foundation
915 15th Street, NW
Washington, DC  20005
Email:  strivedi@aclu.org

Meredith Taylor Brown
Gabriel Arkles
American Civil Liberties Union
Foundation
125 Broad Street
New York, NY  10004
Email:  awoods@aclu.org


*s/ Karen J. King*
KAREN J. KING  (#23508)
Assistant United States Attorney