UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| BRANDON LIVAS, RICHARD BUSWELL, DEWAYNE CORBETT, JOHNNY SMITH, CARLOS LORENZO MARTIN and GAINES ANDREWS, on behalf of themselves and those similarly situated | ) ) ) CIVIL ACTION NO. 20-cv-00422 ) ) ) ) |
| VERSUS | ) JUDGE DOUGHTY ) ) |
| RODNEY MYERS, Warden of Oakdale Federal Correctional Institutions; and MICHAEL CARVAJAL, Federal Bureau of Prisons Director, in their official capacities | ) MAGISTRATE JUDGE KAY ) ) ) ) |

### DECLARATION OF JUAN A. SEGOVIA

In accordance with 28 U.S.C. § 1746, I, JUAN A. SEGOVIA, make the following declaration, under penalty of perjury, pertinent to the above styled and numbered cause:

1. I have been employed by the United States Department of Justice, Federal Bureau of Prisons (BOP) since 1991. I am currently an Associate Warden at the Federal Medical Center, in Fort Worth, Texas. From December 2018 through February 2020, I was an Associate Warden at the Federal Correctional Complex in Oakdale, Louisiana (FCC Oakdale). As of April 5, 2020, I have temporarily reported back to FCC Oakdale to assist with the COVID-19 emergency. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

2. FCC Oakdale is a complex of separate BOP men's prison facilities. The complex includes FCI Oakdale I and FCI Oakdale II, both low security facilities; and the Satellite Prison Camp (the "Camp"), a minimum security facility. The complex is run by a Complex Warden, who has ultimate authority over all of the facilities.

3. The BOP's response to the COVID-19 emergency at FCC Oakdale has been swift and now appears to be proving effective. In the two weeks immediately following FCC Oakdale's first positive COVID-19 test, new potential COVID-19 cases were being identified and isolated daily, often with multiple cases each day. Following the implementation of the control measures described below, the last new isolation cases were identified on April 2, 2020 and April 7, 2020. A decline from multiple daily new cases to two new cases in over a week is a positive sign.

GOVERNMENT EXHIBIT 1

## Conditions at FCI Oakdale I

4.  FCI Oakdale I has faced the brunt of FCC Oakdale's COVID-19 emergency, with 49 positive COVID-19 inmates, 18 hospitalizations, and 6 fatalities. The facility has been locked down since the first positive COVID-19 test result was received on March 21st. FCI Oakdale I houses approximately 970 inmates in six housing units. Three of these housing units are traditional cell housing units, with separately secured cells. Each of these cells has its own commode and sink. Shower stalls are separate from the cells, small groups of inmates are being released to shower, with orderlies disinfecting the showers between each use. The remaining three housing units are dormitory style, with sleeping bunks arranged in cubicles. These dormitory-style housing units share communal bathroom facilities. In these units, inmate orderlies have been deployed on a 24-hour basis to disinfect, using appropriate cleaning chemicals, all such facilities after each use. This is in addition to daily surgical mask, soap, and disinfectant cleaning supplies being available to every inmate in the complex. The commissary has recently opened for once-weekly purchases, with a $25.00 spending limit. A variety of additional soap and other hygiene items have been and remain available for inmate purchase. Orderlies are also assigned to disinfect all other communal use items, such as telephones and computers, after each use by the inmates. All inmates are also being monitored by medical staff daily, including temperature checks.

5.  One housing unit at FCI Oakdale I is currently being used for both quarantine and isolation related to COVID-19. One floor is being utilized for isolation inmates, and the other for inmates in quarantine. In addition to correctional staff, this unit is being staffed by special medical teams, including medical doctors, mid-level practitioners, and nurses, brought in from other BOP facilities. Inmates who exhibit symptoms of COVID-19 are placed on the isolation floor and tested for the virus. Once placed in isolation, the inmates are housed in single occupancy cells to avoid cross-contamination and will remain in such housing until they are deemed cleared or recovered by medical staff acting pursuant to CDC guidelines. To date, seven Oakdale inmates have recovered from COVID-19 and been cleared to return to the population from isolation or the hospital.

6.  Identifiable inmates who were directly exposed to someone symptomatic or a positive COVID-19 patient are being placed in quarantine. For example, the cell or cubicle mates of an isolation inmate would be placed on quarantine status. The quarantine floor has inmates celled with other inmates who shared the same potential exposure, avoiding cross-contamination/exposure to others. Inmates are held in quarantine for a minimum of 14 days, with twice daily medical checks, before they can be cleared from quarantine. BOP has constructed additional tent housing within FCI Oakdale I where those cleared from quarantine may be separately housed for an additional time to monitor their condition and ensure their safety. This tent housing has, among other things, appropriate restroom facilities, solid flooring, air conditioning, telephone, and television access. Email access will be installed shortly. As of April 9, 2020, 27 inmates have moved from quarantine to this post-quarantine unit.

### Conditions at the Oakdale Satellite Prison Camp

7. The Oakdale Satellite Prison Camp (SPC), is a minimum security facility operating under the umbrella of FCI Oakdale II. The Camp houses 123 inmates in a single dormitory-style unit similar to that described for FCI Oakdale I, above. The Camp has had one confirmed positive COVID-19 inmate. That inmate was removed to isolation at FCI Oakdale I when he began displaying symptoms on April 2nd, and a positive test result was received April 6th. The Camp was also placed into lock down status. One additional inmate was removed and placed in isolation on April 7, 2020 after exhibiting potential symptoms.

8. Just as in the FCI, inmate orderlies have been deployed on a 24-hour basis to disinfect, using appropriate cleaning chemicals, all common restroom facilities after each use. Camp inmates receive the same daily surgical mask, soap, and disinfectant cleaning supply availability as every inmate in the complex. The camp's lower security setting allows for heightened social distancing practices during day hours. The outdoor track area remains open to inmates, as long as they maintain recommended social distancing. Also, four outdoor television areas remain open, again permitting greater distancing. As with the rest of the complex, orderlies are assigned to disinfect all other communal use items, such as telephones and computers, after each use. All Camp inmates are also being monitored by medical staff daily, including temperature checks.

### Conditions at FCI Oakdale II

9. FCI Oakdale II is a low security prison facility, housing approximately 760 inmates, all in traditional cell housing units. There was one suspected case of COVID-19 at FCI Oakdale II, but he was transferred to a local hospital and remains pending test results. FCI Oakdale II has been locked down and is following all of the complex-wide precautions including daily surgical mask, soap, and disinfectant cleaning supply availability to inmates and orderlies disinfecting all communal surface between each use.

### Staff Concerns at FCC Oakdale

10. There have been 17 staff members at FCC Oakdale who have positive COVID-19 test results. Approximately 19 others are quarantined away from the complex, awaiting test results. Since March 20th, all staff entering the complex have been screened, to include temperature checks, each time they enter. Staff are also provided with gloves and surgical masks daily. In addition to the disinfectants available to the inmates, staff are also being provided alcohol-based hand sanitizer. Staff working on the isolation floor at FCI Oakdale I are provided and mandated to use the full CDC-recommended complement of personal protective equipment, including gowns and eye protection.

11. Prior to this emergency, staff at FCC Oakdale operated using a complex-wide roster, allowing staff to work at any of the three institutions. This has been changed to avoid cross-contamination and staff are now only working in one institution. For the same reason, the locations of executive staff rounds have been divided up to limit contamination and exposure opportunities.

12.     The number of sick and quarantined staff has caused a number of non-custody staff to have to work in traditional custody staff roles. BOP has since dispatched additional custody and medical staff from other institutions and regional offices to assist, with over 40 such staff currently on site.

### Release or Transfer of Inmates

13.     As Attorney General Barr noted in his April 3, 2020 memorandum, while the Bureau of Prisons has "a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public." Releasing inmates *en masse*, without careful individual consideration "would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses." Thus, while the Attorney General authorized the consideration of inmates for additional home confinement beyond the previously allowed limits, he did so under the expressed condition that such determinations are made by BOP staff in a careful, individualized, and considerate basis to ensure that those "prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates."

14.     **Reductions in Sentence:** As a preliminary matter, the BOP is charged with the care, custody, and control of incarcerated individuals and is not empowered to reduce or modify criminal sentences imposed by courts, or to unilaterally release inmates. Congress has left such decisions, to modify or reduce inmates' sentences, to their original sentencing courts. *See* 18 U.S.C. § 3582. The BOP's role in sentence reduction or modification proceedings involves the potential to move the sentencing court for a reduction in sentence on an inmate's behalf in certain circumstances. 18 U.S.C. § 3582(c)(1)(A). BOP has set forth the guidelines under which it will make such a motion in its Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)." (Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf).

15.     The BOP continues to consider the use of compassionate release for appropriate inmates who have existing terminal and debilitated medical conditions, or who are elderly and nearing the end of their sentence, as provided for in Program Statement 5050.50. FCC Oakdale staff have received a number of requests for consideration for a reduction in sentence motion since this crisis began. Staff continue processing those requests and are attempting to do so quickly in light of the current circumstances.

16.     Recent changes in the law also allow an individual inmate to make such a motion for reduction in sentence or compassionate release with their sentencing court for their current conviction, even if the BOP has not decided to make such motion on their behalf. 18 U.S.C. § 3582(c)(1)(A). Inmates at FCC Oakdale, and at other facilities, have recently availed themselves of this option. At least five FCC Oakdale inmates have recently filed such motions and, after their sentencing courts made the appropriate individualized decisions, have been granted their requested sentence reductions.

17. **Transfers to Residential Re-Entry Centers (RRC) or Home Confinement:** While BOP is not itself empowered to modify an inmate's sentence, Congress has provided the Attorney General and Bureau of Prisons with wide discretion in determining where to confine inmates. *See* 18 U.S.C. § 3621. Both placement in a RRC (also called a halfway house) and home confinement are forms of confinement, not actual releases from custody. *See* 18 U.S.C. § 3624(c). Placement in a halfway house and/or home confinement is discretionary. *See* 18 U.S.C. § 3621(c) ("Such conditions *may* include a community correctional facility" and "[t]he authority under this subsection *may* be used to place a prisoner in home confinement.") (emphasis added). While providing a framework of factors to consider inmate placement, Congress also affirmed the breadth of the agency's discretion in such matters, noting that even sentencing court orders regarding inmate placement in a community correction facility "shall have no binding effect," and that "a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5).

18. While RRC or halfway house placement is considered a beneficial pre-release custody option for appropriate inmates, it requires both significant pre-arrangement and available RRC space before it may allow an inmate to be removed from prison. Pursuant to a March 26, 2020 memorandum from the Attorney General, BOP has prioritized the consideration of home confinement, which has the potential to remove someone from the prison population faster, as a response to the COVID-19 pandemic. Inmates at FCC Oakdale were considered for home confinement under the terms of this memo. Three were thought likely to be approved and were transferred to quarantine in the special housing unit, pending final determination. As the Court is already aware, one of these three were later determined to be ineligible due to a history of sex crimes, one is waiting out his quarantine pending transfer, and one is being re-reviewed based on updated guidance discussed in paragraph 21, below.

19. Previously, BOP was limited in its authority to allow home confinement the "shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624. The recently passed Coronavirus Aid, Relief, and Economic Security Act (CARES Act) authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his findings of emergency conditions which are materially affecting the function of the BOP. On April 3, 2020, the Attorney General made that finding and authorized the Director of the BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale and other BOP facilities where COVID-19 is materially affecting operations. Guidance on implementation of this was previously provided by BOP Central Office, recommending initial review for placement in home confinement of inmates who meet the following nine criteria: 1) Primary Offense is not violent; 2) Primary Offense is not sex offense; 3) Primary Offense is not terrorism; 4) No detainer; 5) Mental Health Care Level is less than IV; 6) PATTERN (BOP's new risk and needs assessment tool) score is MIN; 7) BRAVO (BOP's existing risk evaluation tool) score is LOW or MIN; 8) Completed at least 50% of their sentence; and 9) No Incident Reports in the past 12 months.

20. Based on this initial set of nine criteria, late on April 6, 2020, BOP's Office of Research and Evaluation identified 4,013 inmates nationwide to be the first cohort reviewed under the extended home confinement timeframe. Of these 4,013 inmates, 58 are currently housed at FCC Oakdale. This review would ordinarily be done by case management staff at FCC Oakdale.

However, circumstances made this a challenge, with a leader in this department being out under quarantine, and other staff having to perform ancillary custody functions to ensure basic needs, orderly operations, safety, and security are provided to FCC Oakdale inmates. On April 8, 2020, I began marshalling resources pulling from temporary staff with experience in case management, seeking remote assistance from other facilities, and freeing up FCC Oakdale's existing case management staff by transferring their emergent custody responsibilities to other temporary staff. We focused on the Camp and FCI Oakdale I inmates, because of COVID-19 cases from those facilities. We have since reviewed vast majority of the 58 originally-listed priority inmates. Six of these have been determined to be potentially eligible and they have already been placed in special housing or will be placed there shortly, allowing them to begin the 14-day pre-transfer quarantine. Of those reviewed, the most common reasons for ineligibility appear to be history of previous violence or sex offenses.

21. Acting upon additional guidance from BOP Regional Office Staff, on the afternoon of April 9th, the reviewing staff have also expanded the criteria, removing the eighth factor, consideration of whether inmates in low or minimum facilities have served 50% of their sentence. Accordingly, staff reviewed an additional 90 inmates for home confinement eligibility and dozens more are pending review. So far, 15 additional inmates have been determined to be potentially eligible for home confinement, and are being prepared for pre-transfer quarantine.

22. The primary factors being used to prioritize consideration by BOP staff, including prison disciplinary history, PATTERN score, violence or sex crime history, and classification level, come directly from the Attorney General's March 26th Memorandum. In his April 3rd Memorandum, the Attorney General reiterated that BOP's expanded consideration of inmates for home confinement should continue to be guided by those factors. I have checked BOP records for each of the named petitioners in this matter to determine whether they are likely to be reviewed for consideration under the Attorney General's expansion of home confinement eligibility. Individual Petitioners Livas, Martin, Andrews, and Corbett have PATTERN risk recidivism scores above minimum, removing them from priority consideration. Petitioner Smith is ineligible due to his current offenses, involving the production and possession of child pornography. Finally, based on the new April 9th expanded criteria, Petitioner Buswell appears to be eligible and will be given priority review for home confinement.

23. Staff continue to receive additional guidance on this matter and the number of inmates being given priority consideration is expanding daily. Once we complete review of the list of FCC Oakdale inmates designated for priority consideration by the Attorney General's memorandum and subsequently received guidance, I have been informed that the institution may consider expanding the criteria for review. I anticipate coordinating with medical staff at FCC Oakdale to continue additional reviews for inmates with the highest COVID-19 medical risk, per CDC guidelines, who might not have met the previous criteria.

24. **Non-Transfer Furlough:** Placement in RRC or home confinement, once approved, still requires a number of factors to be satisfied prior to implementation. For example, the release plan needs to be evaluated by the appropriate United States Probation Office. In order to facilitate faster removal of approved inmates from the prison facility, BOP has provided its Wardens with additional guidance allowing the use of non-transfer furloughs up to 30 days in length in specific

circumstances. As inmates are approved for home confinement through the above-described review process, they may also be considered for such a furlough if they meet the criteria. Furloughs are also currently being evaluated for inmates with previously approved RRC placements.

25. Keeping our duties to both the general public and to care for those ordered into our custody in mind, BOP staff currently working at FCC Oakdale, and throughout the region, are working very hard to protect all from the effects of the current pandemic. In addition to the specific COVID-19 remediation measures outlined above, BOP is continually working to reduce population at affected facilities. Within the discretion provided to the agency by Congress, BOP staff continue to identify, evaluate, and place appropriately-situated inmates in halfway house or home confinement, removing them from prison facilities. We also continue to work with sentencing courts on sentence reductions and compassionate release motions, as appropriate.

I declare under that the foregoing is true and correct to the best of my knowledge and belief. Executed on April 10, 2020, at Oakdale, Louisiana.

_____
JUAN A. SEGOVIA
Associate Warden