**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **BRANDON LIVAS,** *ET AL.* | ) | **CIVIL ACTION NO.  20-cv-00422** |
| | ) | |
| **VERSUS** | ) | **JUDGE DOUGHTY** |
| | ) | |
| **RODNEY MYERS,** *ET AL.* | ) | **MAGISTRATE JUDGE KAY** |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF
RESPONDENTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

    A. STATUTORY FRAMEWORK...............................................................................2

    B. THE PETITION AND ALLEGED FACTS ...............................................................3

STANDARD OF REVIEW ....................................................................................................5

    A. LACK OF SUBJECT MATTER JURISDICTION .......................................................5

    B. FAILURE TO STATE A CLAIM ..........................................................................6

ARGUMENT .....................................................................................................................7

    A. THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR
       PETITIONERS' CLAIMS..................................................................................7

        1. The Court is jurisdictionally barred from reviewing the Bureau of Prisons'
           discretionary classification and placement of Petitioners ......................................7

        2. Petitioners cannot establish jurisdiction pursuant to 28 U.S.C. § 1651 ..................9

        3. The Suspension Clause does not confer subject matter jurisdiction in this case .....9

        4. 28 U.S.C. § 1331 does not waive the United States' sovereign immunity, and
           therefore, does not permit the Court to hear Petitioners' claims ..........................11

    B. ADDITIONALLY, PETITIONERS FAIL TO STATE A CLAIM UPON WHICH
       RELIEF MAY BE GRANTED ...............................................................................11

        1. Petitioners' Eighth Amendment claims, challenging their conditions of
           confinement, are not cognizable under 28 U.S.C. § 2241 ...................................11

        2. The Petitioners have not alleged sufficient facts to state a constitutional violation
           with regard to their conditions of confinement.....................................................15

           a. Petitioners' confinement is lawful ................................................................15

i

## TABLE OF CONTENTS (continued)

**Page(s)**

b.  The Petitioners fail to present a case or controversy as they have suffered no injury .............................................................................................................16

c.  Petitioner's direct constitutional claims seeking release are not cognizable ...17

d.  Petitioners have failed to state an Eighth Amendment deliberate indifference claim ...............................................................................................................18

    i.  Petitioners' pleaded facts fail to establish objective deliberate indifference ...............................................................................................19

    ii.  Petitioners cannot show the requisite subjective element of deliberate indifference ...............................................................................................21

    iii.  Petitioners' claims amount to a non-cognizable medical difference of opinion claim .........................................................................................22

CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

## Federal Cases

**Page(s)**

*Alexander v. Trump,*
  753 F. App'x 201 (5th Cir. 2018) ........................................................................ 17

*Anderson v. United States,*
  229 F.2d 675 (5th Cir. 1956) ............................................................................... 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 6

*Beale v. Blount,*
  461 F.2d 1133 (5th Cir. 1972) ............................................................................ 11

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ..................................................................................... 7-8, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 6

*Boumediene v. Bush,*
  553 U.S. 723 (2008) .......................................................................................... 10

*Brauner v. Coody,*
  793 F.3d 493 (5th Cir. 2015) .............................................................................. 23

*Brittingham v. Commissioner,*
  451 F.2d 315 (5th Cir. 1971) ............................................................................... 9

*Creager v. Chapman,*
  No. 4:09-cv-713, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010) ...................... 8-9

*Divine v. United States,*
  328 F.2d 305 (5th Cir. 1964) ............................................................................. 11

*Estelle v. Gamble,*
  429 U.S. 97 (1976) ........................................................................................ 19-20

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ........................................................................................... 15

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ...................................................................... 18, 19, 20, 21, 22

*Flowers v. Dent,*
  21 F.3d 1109, 1994 WL 171707 (5th Cir. 1994) ............................................... 20

iii

# TABLE OF AUTHORITIES

## Federal Cases (continued)

**Page(s)**

*Fullenwiley v. Wiley*,
1999 WL 33504428 (N.D.N.Y Oct. 5, 1999) ........................................................ 9

*Gibbs v. Grimmette*,
254 F.3d 545 (5th Cir. 2001) ........................................................ 21-22

*Gibson v. Collier*,
920 F.3d 212 (5th Cir. 2019) ........................................................23

*Grisham v. United States*,
103 F.3d 24 (5th Cir. 1997) ........................................................ 6

*Hall v. Hodgkins*,
305 F. App'x 224 (5th Cir. 2008) ........................................................ 6

*Hamdi v. Rumsfield*,
542 U.S. 507 (2004) ........................................................ 10

*Helling v. McKinney*,
509 U.S. 25 (1993) ........................................................20

*Hernandez v. Estelle*,
788 F.2d 1154 (5th Cir. 1986) ........................................................23

*Hernandez v. Garrison*,
916 F.2d 291 (5th Cir. 1990) ........................................................ 12

*Holt v. Fleming*,
2003 WL 23109785 (N.D. Tex. Dec. 22, 2003) ........................................................ 16-17

*Ingram v. Wright*,
430 U.S. 651 (1977) ........................................................18

*Jackson v. Procunier*,
789 F.2d 307 (5th Cir. 1986) ........................................................ 6

*Jones v. North Carolina Prisoners' Labor Union, Inc.*,
433 U.S. 119 (1977) ........................................................7

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........................................................ 15

*Kline v. Republic of El Salvador*,
603 F. Supp. 1313 (D.C. 1985) ........................................................ 15

*Laswell v. Brown*,
683 F.2d 261 (8th Cir. 1982) ........................................................ 15

iv

# TABLE OF AUTHORITIES

## Federal Cases (continued)

**Page(s)**

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................. 16

*McCord v. Maggio*,
   910 F.2d 1248 (5th Cir. 1990) ....................................................16

*McKune v. Lile*,
   536 U.S. 24 (2002) ..................................................................8

*Meachum v. Fano*,
   427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) .................... 15, 16

*Morales-Corbala v. United States*,
   *No. P-11-CV-00025-RAJ*, 2011 WL 13185995 (W.D. Tex. July 19, 2011)
   *aff'd* 498 F. App'x 467 (5th Cir. 2012) ................................... 14

*Mortensen v. First Federal Savings and Loan Association*,
   549 F.2d 844 (3rd Cir. 1977) ..................................................... 5

*Northup v. Thaler*,
   2012 WL 4068676 (S.D. Tex. Aug. 7, 2012),
   *rep. & rec. adopted*, 2012 WL 4068997 (S.D. Tex. Sept. 14, 2012) ..................... 12

*Norton v. Dimazana*,
   122 F.3d 286 (5th Cir. 1997) ...........................................19, 20, 21, 22

*Pell v. Procunier*,
   417 U.S. 817 (1974) ..................................................................8

*Pierre v. United States*,
   525 F.2d 933 (5th Cir. 1976) ..................................................... 11

*Poree v. Collins*,
   866 F.3d 235 (5th Cir. 2017) ..................................................... 12

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ................................................................. 10

*Procunier v. Martinez*,
   416 U.S. 396 (1974) ..................................................................7

*Public Citizen, Inc. v. Bomer*,
   274 F.3d 212 (5th Cir. 2001) ..................................................... 16

*Rhodes v. Chapman*,
   452 U.S. 337 (1981) ...............................................................19, 20

## TABLE OF AUTHORITIES

### Federal Cases (continued)

**Page(s)**

*Rivera Rosa v. McAleenan*,
  2019 WL 5191095 (S.D. Tex. Oct. 15, 2019) ....................................... 12

*Sacal-Micha v. Longoria*,
  2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) .............................. 14, 15

*Sacal-Micha v. Longoria*,
  2020 WL 1815691 (S.D. Tex. Apr. 9, 2020) .......................... 13, 14, 17

*Sarres Mendoza v. Barr*,
  2019 WL 1227494 (S.D. Tex. Mar. 15, 2019) ............................ 12, 14

*Schipke v. Van Buren*,
  239 F. App'x 85 (5th Cir. 2007) ........................................... 12, 14

*Shepherd v. Dallas City*,
  591 F.3d 445 (5th Cir. 2009) .................................................... 17

*Spector v. L Q Motor Inns, Inc.*,
  517 F.2d 278 (5th Cir. 1975) ..................................................... 5

*Spencer v. Bragg*,
  310 F. App'x 678 (5th Cir. 2009) ......................................... 12, 14

*Spina v. Aaron*,
  821 F.2d 1126 (5th Cir. 1987) ................................................... 14

*Stanley v. Central Intelligence Agency*,
  639 F.2d 1146 (5th Cir. 1981) ..................................................... 5

*Taylor v. United States*,
  2008 WL 4218770 (5th Cir. 2008) ...............................................11

*Thornburgh v. Abbott*,
  490 U.S. 401 (1989) ...............................................................7

*Turner v. Safley*,
  482 U.S. 78 (1987) .............................................................7, 22

*United States v. Gould*,
  No. 7:05-CR-020-O, 2018 WL 3956941 (N.D. Tex. Jan. 17, 2018) .........................8

## TABLE OF AUTHORITIES

### Federal Cases (continued)

**Page(s)**

*United States v. Smith,*
   393 F.2d 318 (5th Cir. 1968) ...................................................................11

*United States v. Yates,*
   No. 15-40063-01-DDC, 2019 WL 1779773 (D. Kan. Apr. 23, 2019) ......................................8

*V.N.A. of Greater Tift County, Inc. v. Heckler,*
   711 F.2d 1020 (11th Cir. 1983), *cert. denied,* 466 U.S. 936 (1984) ......................................9

*Varnado v. Lynaugh,*
   920 F.2d 320 (5th Cir. 1991) ...................................................................22

*Villela v. Hinojosa,*
   730 F. Supp. 2d 624 (W.D. Tex. 2010) ................................................. 11

*Whitley v. Albers,*
   475 U.S. 312 (1986) ...................................................................18, 19

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ................................................................. 16

*Williamson v. Tucker,*
   645 F.2d 404 (5th Cir. 1981), *cert. denied,* 454 U.S. 897 (1981) ........................................... 5

*Wilson v. Budney,*
   976 F.2d 957 (5th Cir. 1992) .............................................................. 16

*Wilson v. Seiter,*
   501 U.S. 294 (1991) ...................................................................18, 19

# TABLE OF AUTHORITIES
## Federal Statutes

**Page(s)**

18 U.S.C. § 3621 ................................................................................................ 2

18 U.S.C. § 3621(b) .......................................................................................... 8, 9

18 U.S.C. § 3621(b)(5) ......................................................................................... 3

18 U.S.C. § 3621(c) .............................................................................................. 2

18 U.S.C. § 3624(c) .............................................................................................. 2

18 U.S.C. § 3625 .................................................................................................. 9

18 U.S.C. § 3582 .................................................................................................. 2

18 U.S.C. § 3582(c)(1)(A) .................................................................................... 2

18 U.S.C. § 4205(g) ............................................................................................. 2

28 U.S.C. § 1331 ............................................................................................. 3, 11

28 U.S.C. § 1343 ................................................................................................ 11

28 U.S.C. § 1651 ............................................................................................... 3, 9

28 U.S.C. § 2201 ................................................................................................ 11

28 U.S.C. § 2241 ............................................................................................. 3, 11

## Federal Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

Fed. R. Civ. P. 23 ................................................................................................. 4

## Other Authorities

Article I, Section 9, Clause 2 of the U.S. Constitution ..................................... 3, 9

Article III, Section 2, Clause 1 of the U.S. Constitution ..................................... 16

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BRANDON LIVAS,** *ET AL.* | ) | **CIVIL ACTION NO.  20-cv-00422** |
| | ) | |
| **VERSUS** | ) | **JUDGE DOUGHTY** |
| | ) | |
| **RODNEY MYERS,** *ET AL.* | ) | **MAGISTRATE JUDGE KAY** |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## <u>RESPONDENTS' MOTION TO DISMISS</u>

Respondents, Rodney Myers, Warden of Oakdale Federal Correctional Institutions and Michael Carvajal, Federal Bureau of Prisons Director, in their official capacities, by and through David C. Joseph, United States Attorney for the Western District of Louisiana, and Karen J. King, Assistant United States Attorney, respectfully move the Court to dismiss Petitioners' *Petition for Writ of Habeas Corpus, Injunctive, and Declaratory Relief* and *Petitioners' Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale*.

## INTRODUCTION

Petitioners filed a *Petition for Writ of Habeas Corpus, Injunctive, and Declaratory Relief* on April 6, 2020. Doc. 1. Additionally, Petitioners seek class certification. *Id*. The petition should be dismissed as Petitioners have failed to establish a jurisdictional basis for the Court to hear this matter. The Court is barred from reviewing Respondents' decisions regarding classification and placement of inmates. Further, Petitioners are unable to establish the court's jurisdiction under either the All Writs Act, the Suspension Clause, or the general federal question statute. Additionally, the petition fails to state a claim for relief. Petitioners cannot invoke habeas corpus to challenge their conditions of confinement. Moreover, Petitioners have not alleged sufficient

facts to state a constitutional violation related to their conditions of confinement. They are unable to show that their confinement is unlawful, or that Respondents have acted with deliberate indifference to Petitioners' medical needs or safety. [1]

## BACKGROUND

A.    STATUTORY FRAMEWORK

The BOP is charged with the care, custody, and control of incarcerated individuals and is not empowered to reduce or modify criminal sentences imposed by courts, or to unilaterally release inmates.  Congress has left such decisions, to modify or reduce inmates' sentences, to their original sentencing courts.  *See* 18 U.S.C. § 3582.  The BOP's role in sentence reduction or modification proceedings involves the potential to move the sentencing court for a reduction in sentence on an inmate's behalf in certain circumstances.  18 U.S.C. § 3582(c)(1)(A).  BOP has set forth the guidelines under which it will make such a motion in its Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)." (Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf).

Although the BOP is not empowered to modify an inmate's sentence, Congress has provided the Attorney General and Bureau of Prisons with wide discretion in determining where to confine inmates.  *See* 18 U.S.C. § 3621.  Both placement in a Residential Reentry Center ("RRC," also called a halfway house) and home confinement are forms of confinement, not actual releases from custody.   *See* 18 U.S.C. § 3624(c). Placement in a halfway house and/or home confinement is discretionary.  *See* 18 U.S.C. § 3621(c) ("Such conditions may include a

---

[1]  Respondents respectfully request a stay of Petitioners' request for class certification until the Court adjudicates Respondents' Motion to Dismiss Petitioners' *Petition for Writ of Habeas Corpus, Injunctive, and Declaratory Relief*. Accordingly, Respondents will file their motion seeking such stay.

community correctional facility" and "[t]he authority under this subsection may be used to place a prisoner in home confinement.") (emphasis added). While providing a framework of factors to consider in inmate placement, Congress also affirmed the breadth of the agency's discretion in such matters, noting that even sentencing court orders regarding inmate placement in a community correction facility "shall have no binding effect," and that "a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5).

### B.       THE PETITION AND ALLEGED FACTS

Petitioners have filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking relief, "from detention that violates their Eighth Amendment right under the U.S. Constitution." Doc. 1, ¶¶ 12-13. Petitioners allege that this Court has subject matter jurisdiction over their claims pursuant to: (1) §2241 (habeas corpus), (2) 28 U.S.C. § 1651 (All Writs Act), (3) Article I, Section 9, Clause 2 of the U.S. Constitution (Suspension Clause), and (4) 28 U.S.C. § 1331 (general federal question). *Id*. at ¶ 13. Petitioners are six inmates detained at the FCC – Oakdale Complex. Doc. 1, ¶¶ 15-20. They allege various and differing medical conditions.[2]

Petitioners allege that all inmates detained at FCC – Oakdale face "a particularly acute threat of illness, permanent injury, and death[,]" beyond the health concerns presented within the general public due to COVID-19. Doc. 1, ¶ 33. They note that it is "virtually impossible for people who are confined in prisons, jails, and detention centers to engage in the necessary social distancing and hygiene required to mitigate the risk of transmission." *Id*. at ¶ 35. Petitioners allege that the action or inaction of Federal Defendants by not complying with public health guidelines

---

[2] Petitioners allege the following medical conditions: Petitioner Livas (diabetes and acute pancreatitis); Petitioner Buswell (asthma, hypertension, and sleep apnea); Petitioner Smith (hypertension and "a thyroid condition"); Petitioner Martin (childhood asthma); Petitioner Corbett ("a respiratory disorder" due to a lung nodule); and Petitioner Andrews (asthma). Doc. 1, ¶¶ 15-20.

of social distancing and personal hygiene, and treating or preventing outbreaks and deaths related to COVID-19 violate their right to treatment and adequate medical care, and therefore constitute cruel and unusual punishment. *Id*. at ¶¶ 75-7. Further, Petitioners allege that the release of inmates who are "vulnerable to COVID-19" will: (1) protect these inmates from transmission of the virus; (2) mitigate risk of infection for other inmates and staff; (3) mitigate risk of infection to the community; and (4) reduce the burden on the community's health care infrastructure. *Id*. at ¶ 40.

Petitioners also seek class certification pursuant to Rule 23, Fed.R.Civ.P. Doc. 1, ¶ 56. Petitioners seek to represent a class of "all current and future people in post-conviction custody at Oakdale" and a subclass of "persons who, by reason of age or medical condition, are medically vulnerable. *Id*. at ¶ 57. Petitioners define the subclass as:

> [A]ll current and future persons incarcerated at Oakdale over the age of 50, as well as all current and future persons incarcerated at Oakdale of any age who experience: chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications; severe obesity (defined as a body mass index of 40 or higher); diabetes; chronic kidney disease or undergoing dialysis; or liver disease.

*Id*. at ¶ 58. Petitioners estimate that there are 1,871 inmates in the proposed Class and 748 inmates in the proposed Medically-Vulnerable Subclass. *Id*. at ¶ 62. Petitioners conclude that their action "satisfies the numerosity, commonality, typicality, and adequacy requirement for maintaining a class action[.]" *Id*. at ¶ 60.

Petitioners ultimately seek an order directing Respondents to immediately release all proposed subclass members, create a preventative plan for all remaining class members, and create a housing plan for released class members who have either been exposed or tested positive for

4

COVID-19. *Id*. at ¶ 79. Petitioners also seek a declaration that FCC – Oakdale's policies "violate the Eighth Amendment right against cruel and unusual punishment with respect to the Class[.]" *Id*.

## STANDARD OF REVIEW

### A.    LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), may be treated as either a facial or factual challenge to the court's jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981) *cert. denied*, 454 U.S. 897 (1981). Facial attacks, which question the sufficiency of the pleadings, require the court to consider the allegations in the complaint as true. *See Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975). During factual challenges to subject matter jurisdiction, courts are allowed to look outside of the pleadings and no presumptive truthfulness attaches to the allegations in the complaint. *Williamson*, 645 F.2d at 413 (citing *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 844, 891 (3rd Cir. 1977)).

The district court has the ability to dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413. If dismissal is sought for a jurisdictional defect that centers upon the lack of congressional waiver of the government's sovereign immunity, resolution is never appropriate byway of summary judgment, but must be resolved by way of a motion to dismiss for lack of subject matter jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156-57 (5th Cir. 1981).

B.      FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of claims stated in the complaint." *Jackson v. Procunier*, 789 F.2d 307, 309-10 (5th Cir. 1986). A complaint may be dismissed for failure to state a claim where it appears that no relief could be granted under any set of facts that can be proven. *Grisham v. United States*, 103 F.3d 24, 25-26 (5th Cir. 1997).  When considering a motion for failure to state a claim, the court must take factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of Plaintiff; however, conclusory allegations masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level" and "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In ruling on a Rule 12(b)(6) motion to dismiss, the court cannot look beyond the pleadings, however, the court may also consider matters of which it can take judicial notice, like matters of public record. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008).

**ARGUMENT**

A.    THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR PETITIONERS' CLAIMS.

Petitioners bear the burden of establishing the Court's jurisdiction. Petitioners have failed to allege a sufficient basis to invoke the Court's jurisdiction over the subject matter.

1.    *The Court is jurisdictionally barred from reviewing the Bureau of Prisons' discretionary classification and placement of Petitioners.*

The operation of a federal prison involves a wide range of social and economic considerations.  Social concerns and considerations for a prison are markedly different from concerns in operating any other organization.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977).  The Supreme Court has long recognized that broad deference should be given to prison administrators in adopting and executing policies and practices which address the day-to-day problems in operating a corrections facility.  *See Procunier v. Martinez*, 416 U.S. 396, 404-06 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating the inmates placed in their custody, so courts are ill equipped to deal with the urgent problems of prison administration and reform); *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (this Court has afforded considerable deference to the determinations of prison administrators, who in the interest of security, regulate the relations between prisoners and the outside world) (citation omitted); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment or resources, all of which are peculiarly within the province of the legislative and executive branches of government); *Bell v.*

7

*Wolfish*, 441 U.S. 520, 547 (1979) (prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel); *Pell v. Procunier*, 417 U.S. 817, 826-27 (1974) (the 'normal activity' to which a prison is committed – the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence – necessarily requires that considerable attention be devoted to the maintenance of security).

The decisions made by prison officials necessarily involve balancing limited prison resources with the overriding concern of institution security.  In determining inmate placement and transfers, the BOP *must* consider five factors:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement of the court that imposed the sentence…; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Thus classification and placement of inmates is committed to the discretion of the BOP and once that discretion is exercised, "a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b). Other than determining whether the BOP exceeded its authority in reaching its decision, the ultimate outcome is beyond the purview of the court. *See, e.g., McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *United States v. Yates*, No. 15-40063-01-DDC, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019) ("[I]t is BOP—not the courts—who decides whether home detention is appropriate."); *United States v. Gould*, No. 7:05-CR-020-O, 2018 WL 3956941, at *1 (N.D. Tex. Jan. 17, 2018) ("[T]he BOP is in the best position to determine whether RRC/halfway house placement would be of benefit to [the defendant] and to society in general."); *Creager v. Chapman*, No. 4:09-cv-713, 2010 WL

8

1062610, at *3 (N.D. Tex. Mar. 22, 2010) (stating that "nothing in the Second Chance Act of 2007, or 18 U.S.C. § 3621(b) entitles ... any prisoner to placement in a residential reentry center"); *see also*, *Fullenwiley v. Wiley,* 1999 WL 33504428, at *1 (N.D.N.Y Oct. 5, 1999) ("[D]iscretionary decisions by the BOP made pursuant to its authority under § 3621(b) are not subject to judicial review"); *see also* 18 U.S.C. § 3625. Thus the BOP's classification and placement of Petitioners is not subject to judicial review.

2.     *Petitioners cannot establish jurisdiction pursuant to 28 U.S.C. § 1651.*

Petitioners also assert jurisdiction under the All Writs Act, 28 U.S.C. § 1651.  While the All Writs Act may provide the basis for authority to issue an injunction, it does not provide a basis of jurisdiction.  *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1024 n.5 (11th Cir. 1983), *cert. denied*, 466 U.S. 936 (1984)(citing *Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir. 1971)("It is settled that …the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction…acquired on some other independent ground.")  Thus, the Court lacks jurisdiction to hear Petitioners' claims on this basis.

3.     *The Suspension Clause does not confer subject matter jurisdiction in this case.*

Petitioners allege subject matter jurisdiction exists in this matter pursuant to the Suspension Clause, found at Article I, § 9, cl. 2, of the Constitution.  The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it."  No further explanation, nor any argument is provided by Petitioners concerning how the Suspension Clause is applicable in this matter, let alone how it confers this Court with subject matter jurisdiction in this case.

The Suspension Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have the writ of Habeas Corpus, to maintain the "delicate balance of governance" that is itself the surest safeguard of liberty. *Hamdi v. Rumsfield*, 542 U.S. 507, 536 (2004). The Suspension Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest. *Boumediene v. Bush*, 553 U.S. 723, 783 (2008) provided an analytical template for evaluating a Suspension Clause challenge: at step one, the Court must examine whether the Suspension Clause applies to the petitioner; and, if so, at step two, we examine whether the substitute procedure provides review that satisfies the Clause.

In the current matter, there is no challenge within the complaint filed in this matter to the legality of the incarceration of any Petitioner.  It appears instead that the Petitioners are alleging that their continued incarceration would instead constitute cruel and unusual punishment due to the alleged inability of the BOP staff and personnel at FCC Oakdale to contain the spread of COVID19.  There is no argument that there is now, or that there has been, any suspension of Petitioners' right to file a writ of habeas corpus.  The Suspension Clause does not concern itself with the issues raised in this Complaint.  Consequently, these petitioners are unable to demonstrate how the Suspension Clause applies to this lawsuit as a whole and more importantly how it

constitutes a basis for subject matter jurisdiction.  It is not applicable and must be disregarded as a basis for jurisdiction.

        4.     *28 U.S.C. § 1331 does not waive the United States' sovereign immunity, and therefore, does not permit the Court to hear Petitioners' claims.*

Section 1331 is a general jurisdictional statute providing the district court with jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  General jurisdictional statutes do not independently waive the Government's sovereign immunity.  *Taylor v. United States*, 2008 WL 4218770, at *3-4 (5th Cir. 2008) (unpublished); *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972); *Divine v. United States*, 328 F.2d 305 (5th Cir. 1964) (no waiver under 28 U.S.C. § 1343).

Also, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not waive the United States' sovereign immunity as the Act merely provides additional remedies where jurisdiction otherwise exists.  *United States v. Smith*, 393 F.2d 318, 320-21 (5th Cir. 1968); *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956).

    **B.**    **ADDITIONALLY, PETITIONERS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

        1.     *Petitioners' Eighth Amendment claims, challenging their conditions of confinement, are not cognizable under 28 U.S.C. § 2241.*

Petitioners challenge the constitutionality of their conditions of confinement and seek release through habeas corpus. However, habeas corpus is not a means by which to challenge conditions of confinement. The "sole function" of habeas is to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976); *Villela v. Hinojosa*, 730 F. Supp. 2d 624, 627 (W.D. Tex. 2010). In other words, "[h]abeas petitions can only 'grant relief from unlawful imprisonment

11

or custody' and cannot be used to challenge 'conditions of confinement.'" *Rivera Rosa v. McAleenan*, 2019 WL 5191095, at *18 (S.D. Tex. Oct. 15, 2019) (citing *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007)).

The Fifth Circuit, and district courts within this Circuit, have long recognized that habeas corpus actions are the proper vehicle to "challenge the fact or duration of confinement," whereas allegations that challenge an individual's "conditions of confinement" are "properly brought in civil rights actions." *E.g.*, *Schipke*, 239 F. App'x at 85–86; *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017) (noting the "instructive principle [is] that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under [civil rights actions]") (citations omitted); *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (holding that claims of overcrowding, denial of medical treatment, and access to an adequate law library were not proper subjects of a habeas corpus petition); *Sarres Mendoza v. Barr*, 2019 WL 1227494, at *2 (S.D. Tex. Mar. 15, 2019) (denying Honduran detainee's motion for leave to amend because proposed claims concerning "conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action").

Even when a petitioner alleges that inadequate conditions of confinement create the risk of serious physical injury, illness, or death, a petition for a writ of habeas corpus is not the proper vehicle for such a claim. *See, e.g.*, *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (unpublished) (affirming the lower court's dismissal of petitioner's habeas claim even though he alleged that the conditions of confinement endangered his life); *Northup v. Thaler*, 2012 WL 4068676, at *2 (S.D. Tex. Aug. 7, 2012), *rep. & rec. adopted*, 2012 WL 4068997 (S.D. Tex. Sept. 14, 2012) (dismissing petitioner's habeas claim based on alleged risk of abuse by other inmates).

Here, Petitioners challenge the conditions of their confinement, not the lawfulness of their incarceration. (*See, e.g.*, Doc. 1, ¶48 ("[P]hones [are] two feet apart…There are eight working sinks, eight dirty toilets, and five or six working showers for approximately 125 men[.] There is no liquid soap…we only have access to communal bar soap, which is filthy. We do not have access to hand sanitizer or clean hand towels."); *id*. at ¶48 ("He and his team do not have enough personal protective equipment. We are able to get masks… but they are not N95 masks."); *id*. at ¶ 54 ("[T]here is not sufficient personal protective equipment and the layout of the prison makes social distancing physically impossible."); *id*. at ¶ 75 ("Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution"); *id*. at ¶ 78 ("By failing to implement controls necessary to contain the COVID-19 outbreak and stop preventable deaths at Oakdale, Defendants have violated the Eighth Amendment rights of the Class[.]")) *See also Sacal-Micha v. Longoria*, 2020 WL 1815691, at *4 (S.D. Tex. Apr. 9, 2020) (Rodriguez, J.) ("A detention facility's protocols for isolating individuals, controlling the movement of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains custody over detainees.").

Petitioners cite no controlling decision in a habeas corpus case where a court has ordered the release of an individual from detention because of allegedly unlawful detention conditions. Petitioners do not ask the Court to order improved conditions at FCC Oakdale. (*See* Doc. 1, ¶ 74 ("Therefore immediate release is the only medically and legally sound remedy, rather than mere mitigation and/or further proceedings.") Rather, they seek the precise relief unavailable to them: release to cure allegedly unconstitutional conditions.

Respondents are unaware of any court in this district that has granted a habeas petition seeking release due to conditions of confinement related to COVID-19. *See Sacal-Micha v. Longoria*, 2020 WL 1518861, at *8 (S.D. Tex. Mar. 27, 2020). "[The Fifth Circuit has not recognized] habeas corpus as a permissible avenue for relief from alleged inadequate conditions of confinement." *Sacal-Micha*, 2020 WL 1815691, at *5 n. 6. Petitioners rely on a handful of cases that reference the purpose of habeas corpus to protect liberty interests from unlawful restraint. However, none of the cases extend habeas relief to conditions of confinement claims, nor were those courts called upon to examine this issue. *See* Doc. 1, ¶ 74.

"[A]llegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke*, 239 F. App'x at 85-6 (*citing Spina v. Aaron*, 821 F.2d 1126, 1127–28 (5th Cir. 1987)). District courts have applied these principles to deny habeas relief based solely on alleged inadequate conditions of detention. *See, Sarres Mendoza*, 2019 WL 1227494, at * 2; *Morales-Corbala v. United States*, No. P-11-CV-00025-RAJ, 2011 WL 13185995, at * 3 (W.D. Tex. July 19, 2011), *aff'd*, 498 F. App'x 467 (5th Cir. 2012) (explaining that a habeas petition was improper as the plaintiff was not challenging the "constitutionality of his detention and [did] not ask the Court to release him from [the defendant's custody"). Even when a petitioner alleges that inadequate conditions of confinement create the risk of serious physical injury, illness, or death, a petition for a writ of habeas corpus is not the proper vehicle for such a claim. *See, e.g., Spencer*, 310 F. App'x at 679 (affirming the lower court's dismissal of petitioner's habeas claim even though he alleged that the conditions of confinement endangered his life); *Sacal-Micha*, 2020 WL 1815691, at * 6 (ICE detainee seeking release due to the conditions of confinement experienced in the wake of COVID-19 cannot rely on a petition for

14

writ of habeas corpus to obtain the relief he seeks, thus the claim should be dismissed for failure to state a claim).

In the end, because Petitioners challenge the conditions of their confinement, they cannot rely on a petition for a writ of habeas corpus to obtain the relief they seek. *Sacal-Micha*, 2020 WL 1518861, at *4. Their remedy, if any, is a civil rights action. [3]  The court does not have authority to resolve these matters via a habeas petition.  Thus, the petition and the attendant Motion for Preliminary Injunction should be dismissed for lack of subject matter jurisdiction and failure to state a claim.

   2.   *The Petitioners have not alleged sufficient facts to state a constitutional violation with regard to their conditions of confinement.*

      a.   Petitioners' confinement is lawful.

As discussed *supra*, habeas corpus applies to unlawful confinement. Petitioners' confinement here is lawful.[4] All six petitioners were convicted of federal offenses, sentenced, and remanded to the custody of the BOP. As they are still serving their sentences, their confinement remains lawful. Moreover, as argued *supra*, "[t]he decision where to house inmates is at the core of prison administrators' expertise."  *See, Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976).

---

[3] To the extent that Petitioners have a civil rights action, they have not plead such. Also, Petitioners appear to have sued Respondents in their official capacities. As such, Respondents have not requested and undersigned counsel has not been approved to represent them in their individual capacities. Suing a government official in his or her official capacity is the same as asserting a claim against the United States itself. *See, Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Moreover, a *Bivens* action may not be maintained against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 485 (1994). The United States has not waived its sovereign immunity with respect to constitutional claims. *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1317 (D.C. 1985); *Laswell v. Brown*, 683 F.2d 261, 267-68 (8th Cir. 1982).

[4] Petitioners do not allege that their confinement is unlawful.

15

Further, it is well settled that inmates have neither a protectable property nor liberty interest to any particular housing assignment or custodial classification. *Meachum*, 427 U.S. at 224 (the Constitution does not require that the State have more than one prison for convicted felons, nor does it guarantee that the convicted prisoner will be placed in any particular prison); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (a prison inmate does not have a protectable liberty or property interest in his custodial classification); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (classification of prisoners is a matter left to the discretion of prison officials) (citation omitted).

> b.      The Petitioners fail to present a case or controversy as they have suffered no injury.

Under Article III of the United States Constitution, federal courts are confined to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. Standing, one of the doctrines arising under the case and controversy requirement, requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely . . . be redressed by a favorable decision.'" *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)(*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury must be "actual or imminent, not 'conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560 (*citing Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

In the instant case, Petitioners have failed to allege any injury resulting from the alleged conditions at FCC Oakdale. The Petitioners' lack of any injury whatsoever, requires that their petition be dismissed with prejudice. *See, e.g., Holt v. Fleming*, 2003 WL 23109785, *2 (N.D. Tex. Dec. 22, 2003)("All of Holt's allegations center on the possibility that he could have suffered adverse

16

consequences from the absence of emergency call boxes and no legal materials. These speculative claims do not rise to the level of a constitutional issue.") Respondents certainly do not make light of the current pandemic. However, Petitioners speculate regarding whether they have been exposed to COVID-19 as a result of their confinement, but fail to allege, much less prove, any actual harm. The Fifth Circuit has held that "isolated examples of illness, injury, or death, standing alone, cannot prove that conditions of confinement are constitutionally adequate. Nor can the incidence of diseases or infections, standing alone . . . since any densely populated residence may be subject to outbreaks." *Shepherd v. Dallas City*, 591 F.3d 445, 454 (5th Cir. 2009). A detainee does not establish a case simply by alleging that the  detention center has disease or infection present. "Rather, a detainee . . . must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs." *Id.* Petitioners do not allege that Respondents have not provided them with *any* medical care. Rather, their allegations focus on the fact that they are detained with others in typical detention-facility conditions and cannot exercise social distancing.

c.    Petitioners' direct constitutional claims seeking release are not cognizable.

To the extent Petitioners' bring direct constitutional claims, federal circuits, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution. *See Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018)(rejecting a freestanding constitutional complaint against the FBI). Recognizing a cause of action directly under the Eighth Amendment to order Petitioners' release would be a departure from Fifth Circuit precedent. *See Sacal-Micha*, 2020 WL 1815691, at *5-6.

17

   d.   Petitioners have failed to state an Eighth Amendment deliberate
        indifference claim.

Even if a direct constitutional claim seeking release were cognizable in this Circuit, Plaintiffs have not pled it. To satisfy the Eighth Amendment, prison officials "must provide humane conditions of confinement," specifically they "must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Inmates alleging Eighth Amendment violations based on unsafe prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm.  *Id.,* at 834. Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Id.,* at 838-40.

It is only "'the unnecessary and wanton infliction of pain' … [which] constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing *Ingram v. Wright*, 430 U.S. 651 (1977)). "[I]f a particular condition or restriction … is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. at 539.  "[T]he effective management of a detention facility … is a valid objective that may justify imposition of conditions" that are discomforting and restrictive, without the inference that such restrictions are intended as punishment. *Id.* at 540. Moreover, "[it] is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

18

Among the essentials of an Eighth Amendment claim are both objective and subjective elements.  The objective component of an Eighth Amendment claim requires that the deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 833. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' … are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component relates to the defendant's state of mind, and requires deliberate indifference. *Farmer*, 511 U.S. at 833.  To avoid dismissal, a prisoner must not only allege he was subjected to unconstitutional conditions, he must allege facts sufficient to indicate that the officials were deliberately indifferent to his complaints. *Id.*  The subjective prong or second requirement that must be shown before an Eighth Amendment violation can be found is that the prison official must have a "sufficiently culpable state of mind." *Id.* "To be cruel and unusual, a punishment must involve more than an ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. "In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 833 (citing *Wilson*, 501 U.S. at 302-303) (other citations deleted).  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate." *Id.* at 837.  In this case, Petitioners fail to state facts which could establish any of these elements, much less all of them.

   i.   Petitioners' pleaded facts fail to establish objective deliberate
        indifference.

Deliberate indifference does not cover all medical care or all harms, but rather "encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Estelle v. Gamble,* 429

U.S. 97, 105–06 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 105–06.  "[O]nly such indifference that can offend 'evolving standards of decency' can show a violation of the Eighth Amendment. *Id.*  In the context of exposing prisoners to risk of communicable disease, a claim must be dismissed if it does not reach the law's threshold of a threat that is so severe that it would be "contrary to current standards of decency for anyone to be so exposed." *See Flowers v. Dent*, 21 F.3d 1109, 1994 WL 171707, at *2 (5th Cir. 1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  In other words, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844–45.

The conditions Petitioners complain of here are: shared living spaces with bunk beds, communal restroom facilities, telephones and computers in close proximity to each other, and the general inability to practice social distancing "because of the 'barracks-style' housing."  *See* Doc. 1, at 18-20.  There can be no reasonable suggestion that requiring convicted criminals to live in "barracks-style" housing would obviously result in the "unnecessary and wanton infliction of pain," especially not such that it would be "repugnant to the conscience of mankind."  *Norton*, 122 F.3d at 291.  Current community norms allow these same conditions to continue in various settings, such as the military and first responders, even with the threat of COVID-19.  *See e.g.* USNI News, *COVID-19 Threat Reshapes Marine Boot Camp; Celebrations Will Have to Wait* (April 3, 2020), available at: https://news.usni.org/2020/04/03/covid-19-threat-reshapes-marine-boot-camp-

celebrations-will-have-to-wait (acknowledging modified operations regarding visiting and leave, but noting military training continues with close proximity among members); NBC 12 News, *Scottsdale Fire practices social distancing during Coronavirus pandemic* (March 22, 2020) available at: https://www.12news.com/article/news/local/valley/scottsdale-fire-practices-social-distancing-during-coronavirus-pandemic/75-b5422f36-650c-46be-9cdb-1d42f6e54a19 (Fire department continues with modified operations, provision of masks and repeated cleaning of communal spaces, "continually keeping the fire station kitchen, bunk rooms and day rooms as clean as possible.").  To the extent many non-criminals are exposed to substantially similar conditions throughout this country, they are clearly not "repugnant to the conscience of mankind," and thus cannot be the basis for an Eighth Amendment violation.  *See Norton*, 122 F.3d at 291.

> ### ii.   Petitioners cannot show the requisite subjective element of deliberate indifference

To demonstrate the subjective portion of a deliberate indifference claim, a prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate." *Farmer*, 511 U.S. at 837.  Deliberate indifference requires Plaintiff to prove Defendants had a sufficiently culpable mental state, "'[s]ubjective recklessness,' as used in the criminal law." *Norton*, 122 F.3d at 291 (citing *Farmer*, 511 U.S. at 838–40).  Here, Petitioners fail to provide any facts suggesting that Respondents Myers or Carvajal meet the mental state requirement, or that they disregarded anything at all.  Rather, the record in this case is full of actions taken by Myers' and Carvajal's subordinates, attempting to mitigate COVID-19 impacts on the Petitioners.  Petitioners simply contend that the many mitigation attempts are insufficient, perhaps even negligent, though Respondents deny this, as well.  They fail to acknowledge that "[d]eliberate indifference is more than mere negligence." *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).  Petitioners'

"disagreement" with the measures taken by Respondents cannot support a deliberate indifference claim. *Id.* (citing *Norton*, 122 F.3d at 292.).  To support this element of a deliberate indifference claim, Petitioner would need to have pleaded facts "from which it can be inferred that the defendant-officials were… knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer*, 511 U.S. at 846.  No facts supporting such a conclusion were pled.

iii.   <u>Petitioners' claims amount to a non-cognizable medical difference<br>of opinion claim</u>

Mere disagreement with the course of treatment does not state a claim for Eighth Amendment deliberate indifference.  *See Norton,* 122 F.3d at 292; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (In the context of disagreement with medical treatment, neither "[u]nsuccessful medical treatment" nor "mere negligence, neglect or medical malpractice" can establish a deliberate indifference claim.).

Petitioners' claim boils down to the core idea that any prison conditions which do not allow for 100% inmate adherence to the CDC's social distancing recommendations for the general public automatically violate the Eighth Amendment. *See* Doc. No. 9-1, at 13 ("Indeed, unless and until the population at Oakdale is reduced to such a level that the prisoners who remain can engage in social distancing, there is no set of mitigating actions that will reduce or eliminate the unconstitutional risk of harm to all prisoners in the facility.")[5]  This is despite acknowledging daily

---

[5] In demanding the indiscriminate transfer to home confinement of hundreds of prisoners, without careful individual review, Petitioners are asking the Court to tread where the Supreme Court has urged judicial restraint. *Turner v. Safley*, 482 U.S. 78, 85 (1987) ("Prison administration is, moreover, a task that has been committed to the responsibility of those [executive and legislative] branches and separation of powers concerns counsels a policy of judicial restraint. Where a state penal system is involved, federal courts have . . .  additional reason to accord deference to the appropriate prison authorities.").  Such evaluation takes time, as officials must balance many competing interests, including the most important, public safety.

medical checks, limitations on movement, distribution of surgical masks to inmates, increased cleaning, and many other mitigation attempts.  *Id*., at 12.   The many steps taken by the Respondents prove there is no indifference to the risks of COVID-19.  Petitioners' assertion that the actions, led by Dr. Griffin, FCC Oakdale's Clinical Director, are insufficient is precisely the kind of mere disagreement with medical treatment that is proscribed as the basis for a deliberate indifference claim.

Moreover, CDC's social distancing recommendations cannot be the basis for an Eighth Amendment claim.  Failure of prison officials to follow their own regulations does not establish an Eighth Amendment violation.  *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Neither does refusal to abide by novel and unsettled medical recommendations.  *See Gibson v. Collier*, 920 F.3d 212, 221-222 (5th Cir. 2019).  Even if the Bureau of Prisons was acting against the recommendations of the Centers of Disease Control in its calculated response to the COVID-19 pandemic, which it is not, this would still not form the basis for an Eighth Amendment claim.

In the context of this circumstance, a medically-led response to a pandemic, to meet his burden in establishing deliberate indifference, a plaintiff "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Brauner v. Coody*, 793 F.3d 493, 498 (5th Cir. 2015).  At best, Petitioners have simply stated facts which support their disagreement with the treatment choices being made by the Bureau of Prisons.

Petitioners have failed to state an Eighth Amendment claim because they have not pleaded any facts which could support the necessary conclusions that conditions at Oakdale are of the sort that would be "repugnant to the conscience of mankind," or that officials have shown any

23

indifference, much less deliberate indifference, to the risks posed by COVID-19.  Instead, they have merely shown that they disagree with BOP's approach to treating this medical crisis.  As such, they have failed to state an Eighth Amendment claim, and this matter should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Petitioners' *Petition for Writ of Habeas Corpus, Injunctive, and Declaratory Relief* and *Petitioners' Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale.*

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

BY:    *s/ Karen J. King*
       KAREN J. KING  (#23508)
       KATHERINE W. VINCENT (#18717)
       Assistant United States Attorney
       800 Lafayette Street, Suite 2200
       Lafayette, Louisiana  70501
       Telephone:    (337) 262-6618
       Facsimile:    (337) 262-6693
       Email:    karen.king@usdoj.gov