UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BRANDON LIVAS,** *ET AL.* | ) | **CIVIL ACTION NO. 20-cv-00422** |
| | ) | |
| **VERSUS** | ) | **JUDGE DOUGHTY** |
| | ) | |
| **RODNEY MYERS,** *ET AL.* | ) | **MAGISTRATE JUDGE KAY** |
| | ) | |

### RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION

Respondents, Rodney Myers, Warden of Oakdale Federal Correctional Institutions and Michael Carvajal, Federal Bureau of Prisons Director, in their official capacities, by and through David C. Joseph, United States Attorney for the Western District of Louisiana, and Karen J. King, Assistant United States Attorney file this response in opposition to Petitioners' *Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale*. Doc. 9.

### INTRODUCTION

Petitioners filed a *Petition for Writ of Habeas Corpus, Injunctive, and Declaratory Relief* on April 6, 2020. Doc. 1. Additionally, Petitioners seek class certification. *Id*. On April 13, 2020, Petitioners filed an *Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale* seeking a temporary restraining order and/or a preliminary injunction. Doc. 9. Petitioners' Motion for a TRO was denied as moot. Doc. 10. However, the Court granted Petitioners' request for expedited consideration of their request for preliminary injunction. Federal Respondents were ordered to respond to the motion for preliminary injunction by April 15, 2020. *Id*. Respondents filed a Motion to Dismiss Petitioners' *Petition for Writ of Habeas*

*Corpus, Injunctive, and Declaratory Relief* and *Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale*. Doc. 12.

## I. OBJECTIONS

Respondents object to portions of the exhibits attached to Petitioners' motion on the following grounds:

1. Respondents object to statements that are not relevant to the instant matter. FRE 401, 402;
2. Respondents also object to purported factual statements made by the declarants that do not appear to be based upon personal knowledge, lack foundation, and are speculative. FRE 602;
3. Respondents object to declarant statements that offer an improper lay opinion. FRE 701
4. Respondents object to declarant statements that offer opinions the declarant has not demonstrated that he is qualified to render based upon his knowledge, skill, experience, training, or education. FRE 702; and
5. Respondents also object to any statements that contain hearsay. FRE 801, 802.

A complete list of Respondents objections with references is attached hereto as Exhibit 1.

## II.     RELIEF SOUGHT AND FACTS ALLEGED

Petitioners seek relief, "from detention that violates their Eighth Amendment right under the U.S. Constitution." Doc. 1, ¶¶ 12-13. Petitioners allege that this Court has subject matter jurisdiction over their claims pursuant to: (1) §2241 (habeas corpus), (2) 28 U.S.C. § 1651 (All Writs Act), (3) Article I, Section 9, Clause 2 of the U.S. Constitution (Suspension Clause), and (4) 28 U.S.C. § 1331 (general federal question). *Id*. at ¶ 13. Petitioners are six inmates detained at the FCC – Oakdale Complex. Doc. 1, ¶¶ 15-20. They allege to have various and differing medical conditions.[1]

---

[1] Petitioner Livas (diabetes and acute pancreatitis); Petitioner Buswell (asthma, hypertension, and sleep apnea); Petitioner Smith (hypertension and "a thyroid condition"); Petitioner Martin (childhood asthma); Petitioner Corbett ("a respiratory disorder" due to a lung nodule); and Petitioner Andrews (asthma). Doc. 1, ¶¶ 15-20.

Petitioners allege that all inmates detained at FCC – Oakdale face "a particularly acute threat of illness, permanent injury, and death[,]" beyond the health concerns presented within the general public due to COVID-19. Doc. 1, ¶ 33. Noting that it is "virtually impossible for people who are confined in prisons, jails, and detention centers to engage in the necessary social distancing and hygiene required to mitigate the risk of transmission." *Id*. at ¶ 35. Petitioners allege that the action or inaction of Federal Defendants by not complying with public health guidelines of social distancing and personal hygiene, and treating or preventing outbreaks and deaths related to COVID-19 violate their right to treatment and adequate medical care, and therefore constitute cruel and unusual punishment. *Id.* at ¶¶75-7. Further, Petitioners allege that the release of inmates who are "vulnerable to COVID-19" will: (1) protect these inmates from transmission of the virus; (2) mitigate risk of infection for other inmates and staff; (3) mitigate risk of infection to the community; and (4) reduce the burden on the community's health care infrastructure. *Id*. at ¶ 40.

Petitioners also seek class certification pursuant to Rule 23, Fed.R.Civ.P. Doc. 1, ¶ 56. Petitioners seek to represent a class of "all current and future people in post-conviction custody at Oakdale" and a subclass of "persons who, by reason of age or medical condition, are medically vulnerable. *Id*. at ¶ 57. Petitioners define the subclass as:

> [A]ll current and future persons incarcerated at Oakdale over the age of 50, as well as all current and future persons incarcerated at Oakdale of any age who experience: chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications; severe obesity (defined as a body mass index of 40 or

3

> higher); diabetes; chronic kidney disease or undergoing dialysis;
> or liver disease.

*Id*. at ¶ 58. Petitioners estimate that there are 1,871 inmates in the proposed Class and 748 inmates in the proposed Medically-Vulnerable Subclass. *Id*. at ¶ 62. Petitioners conclude that their action "satisfies the numerosity, commonality, typicality, and adequacy requirement for maintaining a class action[.]" *Id*. at ¶ 60.

Petitioners ultimately seek an order directing Federal Respondents to immediately release all proposed subclass members, create a preventative plan for all remaining class members, create a housing plan for released class members who have either been exposed or tested positive for COVID-19. *Id*. at ¶ 79. Petitioners also seek a declaration that FCC – Oakdale's policies "violate the Eighth Amendment right against cruel and unusual punishment with respect to the Class[.]" *Id*.

In their emergency motion, Petitioners include the declarations of six additional inmates and request additional injunctive relief. Petitioners now seek an order from the Court directing Respondents to identify Subclass members within forty-eight hours of the Order and to provide any challenges to the release of all inmates in the Subclass within the same forty-eight hours. Doc. 9 at 2. Then, Petitioners seek to have the Court determine, within forty-eight hours, whether these inmates may be released. *Id*.

### III. CONDITIONS AT OAKDALE

Respondents previously updated the Court on the conditions at FCC Oakdale. Docs. 7-8. Respondents are scheduled to provide additional updates to the Court on April 16, 2020. Doc. 10. Most recently, the Clinical Director of FCC Oakdale, Dr. Richard Griffin, M.D. has provided an update on the status of the Health Services at FCC Oakdale. *See* Declaration of Dr. Griffin,

4

attached hereto as Exhibit 2. Dr. Griffin details the screening and monitoring that are being done within the facility, as well as the measures that are being taken to treat symptomatic inmates. *Id*. at 2-3. Further, the BOP invited officials from the Centers for Disease Control and Prevention (CDC) and the Louisiana Department of Health to tour the complex. After the survey, four recommendations were made by the reviewers, which FCC Oakdale staff immediately began the process of implementing. *Id*. at 3. Additionally, Dr. Griffin reviewed the medical records of the six Petitioners and advised that none of the named Petitioners have exhibited, or reported to medical staff, any symptom consistent with COVID-19. Moreover, none even meet the criteria for COVID-19 testing. Griffin Decl., ¶¶ 13-19. Dr. Griffin also confirmed that Petitioners Andrews and Martin do not have any of the underlying or pre-existing medical conditions that may increase their risk of serious COVID-19 infection. *Id*. at 4.

## IV.    STANDARD OF REVIEW

A TRO or preliminary injunction is an *"extraordinary remedy never awarded as of right."* *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (emphasis added). A party seeking a TRO must show: (1) a "substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of the injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (*quoting Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). " [A] movant must demonstrate 'at least some injury' for a preliminary injunction to issue." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Plaintiffs' request a mandatory injunction, as it requires Defendants to take action. The burden is on the party seeking a mandatory injunction increases and courts apply a heightened standard of review. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971). "[W]here an injunction is mandatory – that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act – the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d 32, 39; *see also*, *Martinez*, 554 F.2d at 1243.

"The same standard applies to both temporary restraining orders and to preliminary injunctions." *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009) (quoting *Chaplaincy*, 599 F. Supp. 2d 1, 3, n. 2 (D.D.C. 2009)).

## V. ARGUMENT

A. Petitioners have not established a substantial likelihood of success on the merits of their claim[2]

Petitioners are unlikely to succeed on the merits of their claims. Respondents filed a a Motion to Dismiss Petitioners' claims as the Court lacks subject matter jurisdiction and the Petition fails to state a claim upon which relief may be granted. Doc. 12. The Court is jurisdictionally barred from reviewing the BOP's discretionary classification and placement of Petitioners. 18 U.S.C. § 3621(b). Further, Petitioners cannot establish jurisdiction under the All Writs Act (28 U.S.C. § 1651), the Suspension Clause (Art. I, § 9, cl.2 of the Constitution), or the

---

[2] Respondents fully briefed this argument in their Motion to Dismiss and supporting memorandum and will only summarize those arguments here. *See* Motion to Dismiss, Doc. 12.

federal question statute (28 U.S.C. § 1331). *See* Doc. 12-1, 7-11. Additionally, Petitioners Eighth Amendment claims, challenging their conditions of confinement, are not cognizable under § 2241. Doc. 12-1, 11-15. Petitioners also have not alleged sufficient facts to state a constitutional violation regarding their conditions of confinement where: (1) Petitioners' confinement is lawful (Doc. 12-1, 15-16); (2) Petitioners have suffered no injury and therefore, fail to present a case or controversy (Doc. 12-1, 16-17); (3) Petitioners are unable to pursue direct constitutional claims seeking release (Doc. 12-1, 17); and (4) Petitioners fail to state an Eighth Amendment deliberate indifference claim (Doc. 12-1, 18-24).

B.  Petitioners have not established a substantial threat of irreparable injury

The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. at 22 (emphasis in original). "To seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Hurley v. Gunnels*, 41 F.3d 662 (5th Cir. 1994) (*quoting Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). A petitioner "cannot carry [his] burden simply by arguing that the status quo is not guaranteed." *Rosa v. McAleenan*, 2019 WL 5191095, at *24 (S.D.Tex. Oct. 15, 2019).

Dr. Griffin has confirmed that none of the named Petitioners have exhibited, or reported to medical staff, any symptom consistent with COVID-19. Moreover, none even meet the criteria

for COVID-19 testing. Griffin Decl., ¶¶ 13-19. At this stage, whether Petitioners may be exposed to COVID-19 is entirely speculative.

C. An injunction usurping defendants' statutory discretion concerning inmate housing is not in the public interest.

Concern for potential exposure to COVID-19 is shared by all, but releasing inmates subject to mandatory detention because of their criminal histories, or releasing inmates without following established processes is against the public interest. As Associate Warden Segovia previously notified this court, Petitioners Livas, Martin, Andrews, and Corbett all have PATTERN risk recidivism scores above minimum, which would remove them from priority consideration for home confinement.[3] Doc. 8, Segovia Decl., ¶ 22. Moreover, Inmate Smith is ineligible for consideration due to his current offenses, which involve the production and possession of child pornography. *Id*. Of the six Petitioners, only Inmate Buswell is eligible for and will receive priority review for home consideration. *Id*.

The public interest is also best served by allowing the order, medical processes and protocols implemented by government professionals to remain in place. *See Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982) (urging judicial deference and finding presumption of validity regarding decisions of medical professionals concerning conditions of confinement); *see also*, *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (this Court has afforded considerable deference to the determinations of prison administrators, who in the interest of security, regulate

---

[3] The BOP's processes for review prior to release to home confinement or furlough protect the public interest. To be sure, Inmate Martin was previously released and violated his parole. He was also arrested on new charges, Possession of a Controlled Substance. *See U.S. v. Martin*, No. 2:12-cr-00010, Dkt. 57 (S.D.N.Y.); *see also,* <https://www.usatoday.com/story/news/nation/2020/04/15/florida-man-released-jail-amid-coronavirus-arrested-murder/5135887002/>(Florida inmate, released due to COVID-19 as a low-level, non-violent offender, arrested *one day after his release* on second-degree murder charges.)

8

the relations between prisoners and the outside world) (citation omitted). FCC Oakdale is reviewing the cases of all inmates who meet the requisite criteria for home confinement to determine whether release is appropriate, and FCC Oakdale has taken significant steps to reduce the likelihood that its inmates and staff will be exposed to COVID-19. *See* Segovia Decl., Doc. 8; Griffin Decl. As previously discussed, FCC Oakdale has discontinued social visitation and screens all staff and required visitors. It screens all incoming detainees for potential illness and segregates and monitors those with potential exposure. These steps show that FCC Oakdale is proactively seeking to protect its population and to address needs as they arise.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny *Emergency Motion for Release of Vulnerable and Low-Risk Prisoners from Oakdale* (Doc. 9).

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

BY: *s/ Karen J. King*
KAREN J. KING (#23508)
KATHERINE W. VINCENT (#18717)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618
Facsimile: (337) 262-6693
Email: karen.king@usdoj.gov