UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| BRANDON LIVAS, *ET AL.* | ) CIVIL ACTION NO. 20-cv-00422 |
| | ) |
| VERSUS | ) JUDGE DOUGHTY |
| | ) |
| RODNEY MYERS, *ET AL.* | ) MAGISTRATE JUDGE KAY |
| | ) |

## DECLARATION OF JUAN A. SEGOVIA

In accordance with 28 U.S.C. § 1746, I, JUAN A. SEGOVIA, make the following declaration, under penalty of perjury, pertinent to the above styled and numbered cause:

1. I have been asked to provide an update on the information I previously provided to the Court on April 10, 2020. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

2. FCC Oakdale currently has 32 active confirmed inmate cases of COVID-19. Fourteen inmates have been medically determined to be cleared or recovered, and have been removed from isolation. There remain no cases at FCI Oakdale II.

3. There has been one additional death, inmate Michael Lilley, bringing the total to seven. Mr. Lilley was one of FCC Oakdale's earlier COVID-19 cases, having been transferred to the hospital on March 24, 2020. Mr. Lilley was a 55 year-old male with pre-existing long-term medical conditions who was serving a 300-month sentence for Aiding and Abetting – Sex Trafficking of Children, Conspiracy to Commit Sex Trafficking of Children, Sexual Exploitation of a Minor, and Distribution of Child Pornography, and Possession of Child Pornography. He would not have been eligible for home confinement or furlough.

4. At least eight FCC Oakdale inmates have successfully pursued reductions in sentence with their sentencing courts and since been released.

5. On April 15, 2020 we received a memorandum from BOP's Correctional Programs Division, confirming the factors to be used when reviewing and referring inmates for home confinement. These factors remain: 1) Primary or prior offense is not violent; 2) Primary or prior offense is not a sex offense; 3) Primary or prior offense is not terrorism; 4) No detainer; 5) Mental Health Care Level is less than IV; 6) PATTERN (BOP's risk and needs assessment tool) score is Minimum; 7) No Incident Reports in the past 12 months; 8) U.S. Citizen; and 9) have a viable release plan. A true and correct copy of this guidance memorandum is attached hereto.

6. The review of inmates for home confinement transfer is being led by BOP case managers throughout FCC Oakdale, with the assistance and guiding of the Complex Case Management Coordinator, regional staff, staff at other BOP facilities, and some temporary staff from other institutions who are assisting at FCC Oakdale in this emergency. When an inmate is determined to be potentially eligible for home confinement, they are referred for further individualized review. Each referral is then reviewed by health services staff, as well as staff in the special investigative section to ensure they are appropriate for home confinement.

7. Currently, 27 inmates have met criteria and been referred for further home confinement processing and review. Six inmates have now been approved for early home confinement transfer under this program. All of these inmates have been placed in pre-transfer quarantine.

8. There are 68 inmates at FCC Oakdale who are aged 65 and older. A review of the roster of those inmates indicates that 53 are ineligible for the home confinement review because they have sex offenses, detainers, or exceed the minimum PATTERN recidivism score. Two remain pending review for home confinement, and eight were denied after receiving individual review for home confinement. Of the five remaining: one was recently given a halfway house date, three were approved for home confinement and are pending transfer, and one is pending a reduction in sentence motion with his sentencing court.

9. The Court also requested information on release of medically vulnerable prisoners. Rather than remove medical professionals from their front line duties to review the medical records of over 1,800 inmates assigned to FCC Oakdale, BOP staff have been reviewing all inmates who potentially qualify for home confinement under the parameters described above. However, in specific response to this query, BOP staff examined rosters for those inmates classified as severely medically impaired, requiring daily nursing care, and those requiring frequent clinical contacts, and/or who may require some assistance with activities of daily living. Eighteen inmates were identified as fitting into these parameters. Of those, one is pending a halfway house referral, and one is pending transfer to a BOP medical facility. The remaining sixteen are ineligible for the home confinement review because they have sex offenses, detainers, or exceed the minimum PATTERN recidivism score.

I declare under that the foregoing is true and correct to the best of my knowledge and belief. Executed on April 16, 2020, at Oakdale, Louisiana.

_____
JUAN A. SEGOVIA
Associate Warden



**U.S. Department of Justice**
**Memorandum**
**Federal Bureau of Prisons**

*Correctional Programs Branch*

*Central Office*
*320 First Street, N.W.*
*Washington, DC 20534*

MEMORANDUM FOR CORRECTIONAL PROGRAM ADMINISTRATORS

FROM:    David Brewer, Acting Senior Deputy Assistant Director

SUBJECT:    Furlough and Home Confinement Additional Guidance

The following guidance is provided from information contained in the CARES Act, memoranda from Attorney General Barr, and the Bureau of Prisons. This memorandum rescinds guidance previously provided.

**Furlough**
The current pandemic is considered an urgent situation that may warrant an emergency furlough under 570.32(b)(1) and 570.33(b). These regulations authorize a non-transfer emergency furlough if the inmate is otherwise deemed appropriate, even if he/she has been submitted for Home Confinement (HC). Effective April 16, 2020, all inmates referred for an emergency furlough due to the Covid-19 pandemic should be submitted and keyed as FURL CRI.

Inmates who have been referred for a release planning furlough based on guidance issued prior to April 16, 2020, do not require a new application. These inmates should be keyed out of the facility as FURL REL. Furlough applications completed on or after April 16, 2020, should follow the updated guidance. Inmates within 12 months of his/her Projected Release Date (PRD), or those who have received Home Confinement placement and have a PRD exceeding one year, should be reviewed for furlough.

**Home Confinement**
In an effort to alleviate concerns and questions, the following criteria should be met when reviewing and referring inmates for HC:
- Primary or prior offense is not violent

- Primary or prior offense is not a sex offense
- Primary or prior offense is not terrorism
- No detainer
- Mental Health Care Level is less than CARE-MH 4
- PATTERN risk score is Minimum (R-MIN)
- No incident reports in the past 12 months (regardless of severity level)
- U.S. Citizen
- Viable Release Plan

If the inmate meets the criteria above, the following factors should be noted, but are not a reason for denial:
- Age
- Projected Release Date
- Percentage of time served
- Medical Care Level
- Victim Witness Program
- Arrival dated (ARSD)

Any concerns regarding an inmate's suitability for HC placement should be noted in Section 11 of the BP-210, *Institutional Referral for CCC Placement.* It is strongly encouraged to refer inmates currently housed in a facility with active Covid-19 cases.

For inmates requesting relocation, a release plan must be submitted to the USPO prior to HC referral submission. The USPO approval letter must be forwarded to the RRM, once received. Institution staff should contact the Health Service Specialist in the RRM's office with questions regarding HC placement for inmates with medical concerns.

If you have any questions, please contact David Brewer, Acting Senior Deputy Assistant Director, Correctional Programs Division, at (202)353-3638.