UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| BRANDON LIVAS, RICHARD BUSWELL, DEWAYNE CORBETT, JOHNNY SMITH, CARLOS LORENZO MARTIN, and GAINES ANDREWS, on behalf of themselves and those similarly situated, *Petitioners*, v. RODNEY MYERS, warden of Oakdale Federal Correctional Institutions; and MICHAEL CARVAJAL, Federal Bureau of Prisons Director, in their official capacities, *Respondents*. | Case No. 2:20-cv-00422<br><br>**Judge Terry A. Doughty**<br>**Magistrate Judge Kathleen Kay**<br><br>**Class Action**<br><br>**IMMEDIATE RELIEF SOUGHT** |

### PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISIDCTION

Pursuant to this Court's April 16, 2020 Order, Dkt. No. 15, Petitioners submit this Opposition to portions of Respondents' Motion to Dismiss that challenge this Court's jurisdiction to hear Petitioners' suit.[1] For the reasons below, Respondents' Motion should be denied to the extent that it challenges this Court's subject-matter jurisdiction to hear Petitioners' claim for relief under 28 U.S.C. § 2241.

### INTRODUCTION

The federal judiciary has subject-matter jurisdiction over prisoners' claims that the government is violating their constitutional rights. Petitioners seek injunctive relief from this

---

[1] This roughly corresponds to Parts A.1-4 and B.1 of the Argument section of Respondents' Memorandum in Support of Respondents' Motion to Dismiss ("Memo"), Dkt. No. 12-1. Respondents' Memo characterizes Part B.1—regarding the availability of 28 U.S.C § 2241 to address Respondents' Eighth Amendment violations—as a failure to state a claim upon which relief can be granted. Memo at 11-15. Petitioners believe this question is jurisdictional; indeed, as shown below, § 2241 clearly confers subject-matter jurisdiction upon this Court. Accordingly, Petitioners address the issue in this Opposition.

Court to halt Respondents' ongoing violation of Petitioners' Eighth Amendment right to be free from cruel and unusual punishment. Indeed, Respondents' deliberate indifference to Petitioners' health and safety has already resulted in seven confirmed inmate deaths and dozens of additional confirmed COVID-19 infections at Oakdale. Because staff enter and exit every day, that indifference also has created an untenable risk to the broader community.

The crisis at Oakdale is many things, including a public-health emergency and a humanitarian crisis. But, fundamentally, it is a large-scale, ongoing violation of the constitutional rights of the more than 1,800 Class members who entirely depend on the government to protect them from serious physical harm or death. For the hundreds of Medically-Vulnerable Subclass members, it is life-or-death. As explained below, this Court has subject-matter jurisdiction to adjudicate these constitutional claims.

Respondents attempt to strip the Court of its jurisdiction by asserting that remediating this crisis at Oakdale is solely within BOP's administrative purview. That assertion has no support in the law. In fact, the Supreme Court has made clear that just the opposite is true: "courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011). Respondents also attempt to rewrite Petitioners' own lawsuit as a mere attempt to improve the conditions inside Oakdale. But Petitioners properly seek redress under § 2241, because the very fact of their confinement creates the constitutional violation at issue. Therefore, only transfer from the prison—coupled with responsible controls to monitor prisoners and ensure the social distancing that is impossible inside it—will cure the problem. It also will save lives.

The Court need not and must not defer to Respondents when such fundamental

constitutional questions are at issue. Nor are Respondents immune from the injunctive relief that Petitioners seek to immediately remediate the imminent threat to their health and safety.

## ARGUMENT

### I. Respondents Cannot "Bar" this Court from Addressing Constitutional Violations

This Court has jurisdiction over Petitioners' constitutional claims, regardless of whether the potential remedy would involve administrative action by Respondents. Respondents' assertion that the constitutional violations that Petitioners allege are not subject to judicial review has no support in the law. When the federal Bureau of Prisons incarcerates an individual, it removes that person's ability to provide for their own needs. *See Brown*, 563 U.S. at 510. In the context of the COVID-19 pandemic, BOP incarceration has taken away prisoners' ability to protect themselves from a lethal virus. Federal prisoners today depend on BOP and prison administrators not just for food, clothing, and medical care, but also for protection from the risk of COVID-19. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison administrators therefore have a constitutional obligation to protect prisoners from the substantial risk of serious harm that COVID-19 presents—they cannot wait until defenseless prisoners actually contract the disease. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").

Where prison authorities fail to meet that prophylactic constitutional obligation—as in Oakdale, where seven men have already died of COVID-19 and dozens more prisoners and staff are sick with it—the courts not only *may* step in. They *must.* The Supreme Court has clearly set out the role of the federal judiciary in these circumstances:

> If government fails to fulfill [its constitutional] obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation. Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals.

3

> Courts nevertheless must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners.

*Brown*, 563 U.S. at 510-11 (internal citations and quotation marks omitted).

Respondents point to no authority immunizing their actions and failures to act from judicial review. While each of Respondents' cited cases recognizes judicial deference to prison administrators in some circumstances, *see* Memo at 16-17 (collecting cases), no court has held that such deference extends to constitutional claims. To the contrary, each of these cases affirms the appropriateness of judicial review—and the need for judicial action—in the face of constitutional violations. *See, e.g.*, *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) ("But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."); *Thornburgh*, 490 U.S. at 414-19 (reaffirming that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution" and applying in-depth judicial review to ensure prison regulations did not unduly infringe on plaintiffs' First Amendment rights) (internal quotation marks and alteration omitted); *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Because prisoners retain [constitutional] rights, '[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'") (quoting *Procunier*, 416 U.S. at 405-06); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (reaffirming that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country" and employing extensive judicial review of a series of jail regulations) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)); *Pell v. Procunier*, 417

U.S. 817, 827 (1974) ("Courts cannot, of course, abdicate their constitutional responsibility to delineate and protect fundamental liberties.").

Respondents' reliance on 18 U.S.C. § 3621(b) is equally misplaced and overbroad. *See* Memo at 8. First, Respondents' characterization of the Petition as merely challenging Respondents' "classification and placement of inmates" is questionable at best.[2] *Id.*; *see Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 181 (D.D.C. 2013) ("Even assuming that BOP's decision was made under 18 U.S.C. § 3621, the Court is not reviewing the merits of BOP's decision as to where [plaintiff] is housed, but the constitutionality of the conditions of confinement it places on him regardless of where he is housed."). Second, even assuming this narrow statute has any application here, nothing in it indicates that constitutional violations are beyond judicial review. Indeed, the cases that Respondents cite do not stand for the proposition that they advance in their motion to dismiss, *i.e.* that the Court does not have subject-matter jurisdiction over Petitioners' claims. *See, e.g.*, *United States v. Yates*, No. 15-40063-01-DDC, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019) (dismissing challenge to computation of good time credits based on grounds other than § 3621(b)); *United States v. Gould*, No. 7:05-CR-020-O, 2018 WL 3956941, at *1 (N.D. Tex. Jan. 17, 2018) (same); *Creager v. Chapman*, No. 4:09-cv-713, 2010 WL 1062610, at *3 (N.D. Tex. Mar. 22, 2010) (same).

Indeed, courts that have considered 18 U.S.C. § 3621(b) in light of constitutional challenges have found that BOP's "discretion is not unbridled" and is still "subject to review for compliance with federal law [and] the U.S. Constitution." *Washington v. Fed. Bureau of Prisons*, No. CV 5:16-3913-BHH, 2018 WL 6061039, at *3 (D.S.C. Nov. 20, 2018). Accordingly, courts

---

[2] This characterization is also disingenuous, considering Respondents' multiple submissions regarding medical treatment, hygiene, and timing thereof—untimely and insufficient as they may be.

maintain "the authority"—in other words, the jurisdiction—"to remedy unconstitutional conduct, even when that authority infringes upon BOP's general discretion over inmate housing and medical treatment." *Id.*; *cf. Woody v. United States Bureau of Prisons*, No. CV 16-862 (DWF/BRT), 2016 WL 7757523, at *3 (D. Minn. Nov. 22, 2016), *report and recommendation adopted by*, No. CV 16-862 (DWF/BRT), 2017 WL 150505 (D. Minn. Jan. 13, 2017) (considering analogous provision in 18 U.S.C. § 3625 and holding, "Congress has not explicitly precluded review of *constitutional* claims based on these or similar decisions.") (emphasis in original); *Royer*, 933 F. Supp. 2d at 181 (same).[3]

## II. The Court Has Jurisdiction to Hear Petitioners' Claims Under 28 U.S.C. § 2241, Which is the Proper Vehicle for Petitioners' Claims

This Court has jurisdiction over petitions for habeas corpus where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Immig. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 298 (2001) (recognizing 28 U.S.C. § 2241 as a jurisdictional statute); *see also Vazquez Barrera v. Wolf*, No. 4:20-cv-1241, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020) (court "has jurisdiction to rule on Plaintiffs' petition for habeas corpus" based on medical vulnerability to COVID-19 infection). Because Petitioners assert that the very fact of their confinement in the face of the COVID-19 outbreak at Oakdale violates their Eighth Amendment rights, this Court has jurisdiction over the petition. Indeed, Respondents do not challenge the Court's subject-matter jurisdiction to hear habeas petitions generally, and do not deny that Petitioners expressly invoked habeas jurisdiction in their

---

[3] Petitioners are aware that the All Writs Act and the Suspension Clause, cited in the Petition under the heading "Jurisdiction and Venue," do not independently grant this Court jurisdiction to hear Petitioners' claims. Memo at 9-11. Rather, alongside 28 U.S.C. §§ 1331 and 2241, they describe the combination of statutory and Constitutional authority under which this Court may order the necessary relief in this case. This belt-and-suspenders approach seems particularly appropriate in light of Respondents' attempt to "jurisdictionally bar[]" the Court from even reviewing potential constitutional violations by high-ranking executive branch officials.

Petition. *See* Pet. For Writ of Habeas Corpus, Dkt. No. 1 ("Pet.") at ¶ 13 ("This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 2241 (habeas corpus)").[4] Nor could they.

Instead, Respondents attempt to reframe Petitioners' claim as one that merely challenges their conditions of confinement, which Respondents deem "not cognizable" under 28 U.S.C. § 2241. Respondents deliberately misread Petitioners' claims. Petitioners do not challenge just the *conditions* of their confinement—they challenge the very *fact* of their confinement, and the remedy they seek is release. *See* Pet. at ¶ 11 ("Petitioners . . . request immediate release of all Petitioners and Class Members, coupled with appropriate support and conditions upon release, as informed by public health expertise"); ¶ 79 (seeking an order "requiring Defendants to immediately release all Medically-Vulnerable Subclass Members, with supports to ensure social distancing and other expert-recommended measures to prevent the spread of coronavirus"); *see also* Petitioner's Emergency Mot. for Release of Vulnerable and Low-Risk Prisoners from Oakdale, Dkt. No. 9 ("Emergency Mot.") at 1-2 (requesting the entry of "[a] preliminary injunction, permanent injunction, and/or writ of habeas corpus requiring Defendants to: (a) Continue to release all current and future Medically-vulnerable Subclass members […] (c) Release additional Class Members, […] as needed to ensure that all remaining persons incarcerated at Oakdale are under conditions consistent with CDC and public health guidance"). Petitioners detail conditions like the impossibility of social distancing at Oakdale to illustrate that

---

[4] Notwithstanding the absence of a jurisdictional challenge on these grounds, Petitioners address the issue here in light of courts' treatment of this issue as jurisdictional.

those conditions are so dire, and have been for so long, that "immediate release is the only medically and legally sound remedy." *See* Pet. at ¶ 74.[5]

Not only does the Court have jurisdiction over Petitioners' constitutional challenge to the fact of their confinement, this is precisely the sort of claim contemplated by § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973) (where an individual is "challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release," the action fell within "the heart of habeas corpus" and was properly asserted under § 2241). Indeed, as this Court recently explained, where a prisoner "challenges [ ] general prison conditions, but [ ] seeks an accelerated release from prison, [it] is properly asserted as a *habeas* action, not as a civil rights action." *VanDyke v. La. Dep't of Corrs.*, CV 20-0448, 2020 WL 1869016, at *1 (W.D. La. Apr. 13, 2020) (Doughty, J.) ("Simply put, habeas claims involve someone's liberty, rather than mere civil liability") (quoting *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998); citing *Preiser*, 411 U.S. at 489; *Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)). Where, like here, Petitioners "seek immediate release from detention because there are no conditions of confinement that are sufficient to prevent irreparable constitutional injury given the facts presented in their individual cases," they are "'challenging the very fact or duration of [their] physical imprisonment'" and "the proper remedy is a writ of habeas corpus." *Vazquez Barrera*, 2020 WL 1904497, at *4 (quoting *Preiser*, 411 U.S. at 500); *compare, e.g.*, *Newton v. La. Dep't. of Corrs.*, CV 20-0447, 2020 WL 1869018, at *1 (W.D. La. Apr. 13, 2020) ("Newton indeed

---

[5] Of course, Petitioners also seek improved conditions within Oakdale for those prisoners who are not immediately released. *See* Pet. at ¶¶ 79(3)(i), 79(4); Emergency Mot. at ¶ 3(c). But this is not the primary relief requested; it only takes hold if and when sufficient numbers of Class and Subclass Members have been transferred, and it is only to ensure basic social distancing and safety from infection for those who remain.

challenges the general prison conditions [related to COVID-19], but he seeks an accelerated release from prison, which is properly asserted as a habeas action, not as a civil rights action.") (Doughty, J.).[6]

In recent weeks, federal courts across the country have applied this well-settled understanding of habeas to the COVID-19 context and determined that habeas is an appropriate jurisdictional avenue. *See, e.g.*, *Vazquez Barrera*, 2020 WL 1904497, at *3-4; *Malam v. v. Adducci*, Case No. 20-10829, 2020 WL 1672662, at *3 (E.D. Mich. Apr. 5, 2020) (though "the application appears to concern Petitioner's conditions of confinement . . . Petitioner may nonetheless bring her claim under 28 U.S.C. § 2241 because she seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable constitutional injury under the facts of her case"); *Money v. Pritzker*, Nos. 20-cv-2093 & 20-cv-2094, 2020 WL 1820660, at *8 (N.D. Ill. Apr. 10, 2020) ("[t]he unique context in which litigation over COVID-19 arises may cast some doubt on th[e] seemingly obvious proposition [that Eighth Amendment claims are appropriate for § 1983 because they relate to conditions,] because the sudden threat to mortality from the spread of the virus in a congregate setting may affect the fact or duration of confinement"); *Mays v. Dart*, No. 20-cv-2134, 2020 WL 1812381, at *6 (N.D. Ill. Apr. 9, 2020) (holding that § 2241 could be an appropriate avenue

---

[6] Respondents drastically overstate the case when they assert that "habeas corpus is not a means by which to challenge conditions of confinement." Indeed, the Supreme Court has left the door open to so-called "conditions of confinement" challenges under the habeas regime. *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017) ("we have left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus"); *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979) ("we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement"); *Preiser*, 411 U.S. at 499 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the constraints making custody illegal"); *see also Coleman v. Dretke*, 409 F.3d 665, 669-70 (5th Cir. 2005) (granting habeas relief over dissent arguing case involved conditions of confinement and noting that "neither the Supreme Court nor this court has held that certain claims must be brought under § 1983 rather than habeas").

for relief because "plaintiffs' claims, as they have framed them, *do* bear on the duration of their confinement (they contend, ultimately, that they cannot be held in the Jail consistent with the Constitution's requirements), and they are not the sort of claims that are, or can be, appropriately addressed via a claim for damages") (emphasis in original); *Bent v. Barr*, No. 19-cv-6123, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020) (habeas petition challenging continued detention during COVID-19 pandemic challenges validity of confinement, not conditions of confinement); *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at *7 (D. Md. Apr. 3, 2020) ("[A]lthough the grounds on which they seek release relate to their conditions of confinement, Petitioners seek complete release from confinement, which is 'the heart of habeas corpus'"); *Thakkar v. Doll*, No. 20-cv-480, 2020 WL 1671563, at *2 (M.D. Pa. Mar. 31, 2020) (petitioners seeking release from ICE detention due to COVID-19 threat "appropriately invoked th[e] court's jurisdiction through a 28 U.S.C. § 2241 petition for writ of habeas corpus"); *Amaya-Cruz v. Adducci*, No. 1:20-cv-789, 2020 WL 1903123, at *2-3 (N.D. Ohio Apr. 18, 2020) (granting petitioner's habeas petition and motion for temporary restraining order for immediate release from immigration detention, in part because "everything possible should be done to release high-risk persons from penal institutions at this unique time both to protect them, the remaining detainees, and the staff"); *Fofana v. Albence*, No. 20-10869, 2020 WL 1873307, at *6-12 (E.D. Mich. Apr. 15, 2020) (granting medically vulnerable petitioner's habeas petition and temporary restraining order releasing him from immigration detention); *Jeferson V.G. v. Decker*, No. 20-cv-3644, 2020 WL 1873018, at *5 (D.N.J. Apr. 15, 2020) ("[U]nder 28 U.S.C. § 2241, a district court may exercise jurisdiction over a habeas petition when the petitioner is in custody and alleges that his custody violates the constitution, laws, or treaties of the United States"); *United States v. Brady*, Nos. 3:17-cr-60, 3:20-cv-623, 2020 WL 1865486, at *1 (M.D. Pa. Apr. 14,

2020) ("No doubt that a habeas petition under § 2241 is the proper vehicle for an inmate to challenge 'the fact or length of confinement', […] or the 'execution' of her confinement […] [w]hen a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus.") (internal quotations omitted); *Valenzuela Arias v. Decker*, No. 20-cv-2802, 2020 WL 1847986, at *2-10 (S.D.N.Y. Apr. 10, 2020) (granting a temporary restraining order requiring the release of three immigration detainees pursuant to their multi-party habeas petition); *Barbecho v. Decker*, No. 20-cv-2821, 2020 WL 1876328, at *5, *9 (S.D.N.Y. Apr. 15, 2020) (granting the immediate release of three immigration detainees as a result of their habeas petitions because, among other factors, the three detainees were high-risk as defined by the CDC and the Government's failure to "alleviate the *specific, serious,* and *unmet* medical needs of the high-risk detainees" amounted to deliberate indifference and thus violated the Eighth Amendment).[7]

The core of habeas has always been to release those being held in unconstitutional confinement, and it has always been unconstitutional to subject defenseless prisoners to the substantial risk of a deadly disease. Federal courts' recent application of these principles to COVID-19 is perfectly logical, and the logic should apply to Petitioners' claims as well.

---

[7] This Court could also establish jurisdiction under 42 U.S.C. § 1983; during the COVID-19 pandemic in particular, many courts and commentators have found any jurisdictional distinction between Section 1983 and Section 2241 largely inapplicable, particularly in the context of preliminary injunctive relief. *See, e.g.*, *Money*, 2020 WL 1820660, at *9 (court hearing prisoner claims for temporary release during jail COVID-19 outbreak "will consider Petitioners' habeas claim after assessing Plaintiffs' request for the same relief under Section 1983"); Declaration of Judith Resnik, *Money*, 2020 WL 1820660, Dkt. No. 24-3 at 7-8 ("COVID-19 cases may be predicated both on habeas corpus petitions and on §1983" or even an "enlargement" theory); *Newton*, 2020 WL 1869018, at *1 (assuming *arguendo* that claims for release based on COVID-19 could be asserted "under Section 1983 or habeas").

11

## III. Respondents are Not Entitled to Sovereign Immunity

Respondents assert that this Court cannot hear Petitioners' claims because the Government has not waived sovereign immunity, and Defendants do not consent to being sued. Memo at 11. But sovereign immunity poses no bar to Petitioners' challenge.

It is well established that sovereign immunity does not bar claims seeking solely injunctive relief to prevent future violations of federal law by federal officials. *See, e.g.*, *United States v. Lee*, 106 U.S. 196, 220-23 (1882) (suits against federal officers alleging unconstitutional takings of property not barred by sovereign immunity); *Ex Parte Young*, 209 U.S. 123, 160 (1908) ("The state has no power to impart to [an official] any immunity from responsibility to the supreme authority of the United States."); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 697-99 & nn.18-19 (1949).[8] As the Supreme Court has explained: "we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. But that has been true not only with respect to violations of federal law by state officials, but also with respect

---

[8] *See also* Erwin Chemerinsky, Federal Jurisdiction § 9.1, at 588 (4th ed. 2003) ("[T]he Supreme Court long has held that federal officers may be sued for injunctive relief."); James E. Pfander, The Limits of Habeas Jurisdiction and the Global War on Terror, 91 CORNELL L. REV. 497, 528-29 (2006) ("[H]igh government officials in Washington, D.C. cannot invoke the doctrine of official immunity against constitutional challenges to government action" even outside the habeas context) (footnotes omitted); Vicki C. Jackson, *Suing the Federal Government: Sovereignty, Immunity, Immunity, and Judicial Independence*, 35 GEO. WASH. INT'L L. REV. 521, 524 n. 8 ("[T]he [Supreme] Court's reliance on habeas practice in both *Young* and *Lee* better accords with the view that sovereign immunity was understood simply as no bar to a range of claims against government officers in connection with their official duties."); *compare, e.g.*, *Brennan v. Stewart*, 834 F.2d 1248, 1255 (5th Cir. 1988) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide it on the merits. Jurisdiction over a claim for equitable relief under *Ex parte Young* grounded on the federal question statute 28 U.S.C. § 1331 is usually intertwined with the merits. Therefore, unless the suit clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous, *a federal court always has jurisdiction of a suit seeking to enjoin state officials from violating federal law*. If the officials are not violating federal law, judgment should be entered for the defendants on the merits.") (internal quotations and citations omitted) (emphasis added).

to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) (citations omitted). "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and [it] reflects a long history of judicial review of illegal executive action, tracing back to England." *Id.* at 327.

Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, also operates as a waiver of sovereign immunity in non-monetary claims against federal agencies and their officers sued in their official capacity, as Petitioners have done here. *See* 5 U.S.C. § 702, 90 Stat. 2721 (1976) ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."); *see also Rothe Dev., Inc. v. U.S. Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011) (the APA waives immunity to the extent a party adversely affected by agency action seeks relief other than money damages); *M.J. Farms, Ltd. v. U.S. Fish & Wildlife Serv.*, 593 F. Supp. 2d 907, 910 (W.D. La. 2008) (APA waiver permits suit by parties suffering legal wrong because of agency action); *see also Chemerinsky*, *supra*, at 616 ("The [APA] is clear: The United States has waived its sovereign immunity in suits requesting other than monetary relief.").[9]

---

[9] The Fifth Circuit has held that sovereign immunity is waived under § 702 when there has been "agency action" as that term has been defined in § 551(13). *Doe v. United States*, 853 F.3d 792, 799 (5th Cir. 2017), as revised (Apr. 12, 2017). The statute defines the term to include the whole or part of an agency "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Here, Oakdale and the Bureau of Prisons are both agencies whose failure to act has waived sovereign immunity under § 702. They have failed to protect Petitioners from an unconstitutional risk of harm, and they have failed to provide relief from exposure to the coronavirus and its spread within the prison.

13

## CONCLUSION

For the reasons stated above, this Court should deny Respondents' Motion to Dismiss to the extent it seeks dismissal based on lack of subject-matter jurisdiction. As such, the parties should move to the scheduled Preliminary Injunction hearing and address the immediate need for habeas relief at Oakdale.

Respectfully submitted this 20th day of April, 2020.

Respectfully submitted by:

| | |
|---|---|
| /s/ Bruce Hamilton<br>Bruce Hamilton, La no. 33170<br>Katie Schwartzmann, La no. 30295<br>ACLU-F of Louisiana<br>P.O. Box 56157<br>New Orleans, La 70156<br>(504) 522-0628<br>kschwartzmann@laaclu.org<br>bhamilton@laaclu.org<br><br>David Luger*<br>Hannah O. Koesterer*<br>KATTEN MUCHIN ROSENMAN LLP<br>525 W. Monroe St.<br>Chicago, IL 60661<br>david.luger@katten.com<br>hannah.koesterer@katten.com<br><br>Ryan J. Meyer*<br>KATTEN MUCHIN ROSENMAN LLP<br>2121 Pearl St., Ste. 1100<br>Dallas, TX 75201<br>ryan.meyer@katten.com<br>*pro hac vice applications forthcoming | Somil Trivedi**<br>Jennifer Wedekind**<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>915 15th St., NW<br>Washington, DC 20005<br>**admitted pro hac vice<br><br>Andrea Woods*<br>Brandon Buskey*<br>Meredith Taylor Brown*<br>Gabriel Arkles*<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>125 Broad St.<br>New York, NY 10004<br>Tel. (212) 549-2500<br>awoods@aclu.org<br>*pro hac vice applications forthcoming |

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 20, 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

      I further certify that copies of all pleadings and other papers filed in the action to date or to be presented to the Court at the hearing, have been furnished to the Defendants' attorneys, who have already made an appearance in this matter.

      /s/ Bruce Hamilton
      Bruce Hamilton, La. Bar No. 33170